**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

KURT B. OLSEN,                                      )
                                                              )
                              Plaintiff,              )
                                                              )
v.                                                              )        Case No. 1:22-CV-00807-CJN
                                                              )
NANCY PELOSI, in her official              )
capacity as Speaker of the United        )
States House of Representatives, et al.  )
                                                              )
                                                              )
                              Defendants.           )

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S**
**MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff submits this Reply. Plaintiff respectfully requests that the Court conduct a

hearing on his Motion for Preliminary Injunction.

Patrick M. McSweeney                          Charles Burnham, Esq.
**MCSWEENEY, CYNKAR & KACHOUROFF, PLLC**         DC Bar # 1003464
Patrick M. McSweeney*                          **BURNHAM & GOROKHOV, PLLC**
Christopher I. Kachouroff*                      1424 K St. NW Suite 500
13649 Office Place, suite 101                  Washington, D.C. 20005
Woodbridge, VA 22192                           202.386.6920
Telephone: (804) 937-0895                      202.390.7587 F
patrick@mck-lawyers.com                        charles@burnhamgorokhov.com
chris@mck-lawyers.com

* Admitted *pro hac vice*

TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ............................................................................. **3-4**

**INTRODUCTION** ........................................................................................... **5**

**ARGUMENT** .................................................................................................. **8**

    **A. Mr. Olsen's First Amendment Claim is Well-Pled** ................................. **11**

        1.  The Speech or Debate Clause is not a Bar ..................................... 14

        2.  The Allegations in Count II Are Adequately Specific ..................... 15

        3.  Balancing Necessarily Requires Consideration of Evidence .......... 15

    **B. Mr. Olsen's Fourth Amendment Claim is Well-Pled** ............................. **16**

    **C. The Select Committee's Investigation is an Unauthorized Law Enforcement Undertaking** ............................................................................................. **17**

    **D. The Select Committee's Subpoena is in Support of an Investigation that Has Been Disclosing Information for the Sake of Disclosure Alone** ............................. **20**

    **E. The Select Committee's Subpoena Violates the Attorney-Client Privilege Asserted by Mr. Olsen on Behalf of Clients** ........................................................... **20**

    **F. A Preliminary Injunction Should Be Granted** ..................................... **20**

        1.  There is a Likelihood of Success ................................................. 20

        2.  Mr. Olsen Will Suffer Irreparable Injury Without the Injunction ........... 20-21

        3.  The Balance of Equities Weighs in Favor of Mr. Olsen ................. 21

        4.  The Public Interest Weighs in Favor of Upholding the Constitution ........... 22

**CONCLUSION** .............................................................................................. **22**

<u>TABLE OF AUTHORITIES</u>

## CASES

*Agnew v. St. Louis County,* 150 F. Supp. 3d 989, 1002-03 (E.D. Mo. 2020) .............................. 11

*Americans for Prosperity v. Grewal*, 2019 U.S. Dist. LEXIS 170793, at *58-59 (D. NJ. 2019). 20

*Anderson v. Dunn,* 19 U.S. 204, 230-31 (1821) ............................................................... 15, 16

*Ashcroft v. Iqbal,* 556 U.S. 662, 677-81 (2009)..................................................................... 10

*Bailey v. Drexel Furniture Co., Child Labor Tax Case,* 259 U.S. 20, 27 (1922) ........................ 13

*Barenblatt v. United States,* 360 U.S. 109, 112 (1959) ............................................................ 17

*Barry v. United States ex rel. Cunningham,* 279 U.S. 597, 613-14 (1929) ................................ 15

*Citizens United v. FEC,* 558 U.S. 310 (2010)........................................................................ 13

*Davis v. Pension Benefit Guar. Corp.,* 571 F.3d 1288, 1292 (D.C. Cir. 2009) ........................... 19

*Eastland v. United States Servicemen's Fund*, 421 U.S. 491 (1975).......................... 8, 11, 13

*Elrod v. Burns,* 427 U.S. 347, 373 (1976) ............................................................................ 19

*Illinois Opportunity Project v. Bullock,* 2020 U.S. Dist. LEXIS 1053, * 5-6 (D. Mt. 2020) ....... 14

*In re Campbell,* 166 U.S. 661 (1897).................................................................................... 15

*Lahovski v. Rush Twp.,* 441 F. Supp. 3d 43, 58-59 (M.D.Pa. 2020) .................................... 10, 14

*League of Women Voters of the U.S. v. Newby,* 838 F.3d 1,12 (D.C. Cir. 2016) ........................ 21

*Lo-Ji Sales v. New York,* 442 U.S. 319, 329 (1979) ............................................................... 16

*La. St. Conf. of the NAACP v. Louisiana,* 490 F. Supp. 3d 982, 1005 (M.D.La. 2020) ......... 10, 11

*Louisiana v. Becerra,* 2022 WL 16571, * 15 (W.D. La. 2022) ................................................. 21

*Mancusi v. DeForte,* 392 U.S. 364, 370-71 (1968) ................................................................. 15

*Marcus v. Search Warrant of Property,* 367 U.S. 717 (1961).................................................. 16

*Marshall v. Gordon,* 243 U.S. 521, 538 (1917)..................................................................... 15

*McCulloch v. Maryland,* 17 U.S. 316, 423 (1819) ................................................................. 13

*McGrain v. Daugherty*, 273 U.S. 135 (1927) ....................................................................... 17

*McIntyre v. Ohio Elections Comm'n,* 514 U.S. 334 (1995)..................................................... 20

*McSurely v. McClellan,* 553 F.2d 1277 (D.C. Cir. 1976)............................................ 8, 10, 11, 13

*Mincey v. Arizona,* 437 U.S. 385, 390 (1978)....................................................................... 15

*Quinn v. United States,* 349 U.S. 155 (1955)......................................................................... 7

*Roman Catholic Diocese of Brooklyn v.* Cuomo, 141 S. Ct. 63 (2020)...................................... 19

*Sartor v. Arkansas Nat. Gas Co.,* 321 U.S. 620, 628 (1944) ..................................................... 4

*Servicemen's Fund,* 421 U.S. at 509.................................................................................... 11

*Stanford v. Texas*, 379 U.S. 476, 484-85 (1965)..................................................................... 16

*Tree of Life Christian Sch. v. City of Upper Arlington*, 2012 U.S. Dist. LEXIS 32205, at *7-9

  (S.D. Oh. 2012) .......................................................................................................... 20

*Trump v. Mazars USA, LLP,* 140 S. Ct. 2019, 2034-36 (2020).................................. 9, 15, 17, 19

*United States v. Brewster,* 408 U.S. 501, 526 (1972) .............................................................. 8

*United States v. Rumely,* 345 U.S. 41 (1953)......................................................................... 7

*VoteAmerica v. Schwab*, 2021 U.S. Dist. LEXIS 223601, at *20-21 (D.Kan. 2021).................. 20

*Watkins v. United States,* 354 U.S. 178 (1957).................................................................... passim

*Winter v. NRDC,* 555 U.S. 7 (2008) ................................................................................... 4

**OTHER AUTHORITIES**

*Eastman v. Thompson,* No. 8:22-cv-00099 (C.D.Cal. May 31, 2022) (Doc. 354) ........................ 5

*Teigen v. Wisconsin Elections Commission*, 2022 WI 64, ¶ 23, 2022 WL 2565599, at *6........... 6

## INTRODUCTION

Defendants' Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction ("Opp. Mem.") contends that Plaintiff has failed to show that any of the four factors of the *Winter v. NRDC* test favor his position. Defendants argue that there is no likelihood of success on any claim because the speech or Debate Clause bars all claims in the Amended Complaint and none states a valid cause of action; that Plaintiff's "conclusory" allegations of injury do not satisfy the irreparable injury requirement; and that the balance of equities and the public interest weigh in Defendants' favor. Defendants' arguments are without merit.

The Select Committee's principal charge is that "Mr. Olsen continues to peddle debunked claims of election fraud." Opp. Mem. at 1. Contrary to Defendants' assertion, none of the evidence on which Mr. Olsen relies has ever been adjudicated or "debunked." The Select Committee's assertion that testimony at its public hearings has shown Mr. Olsen's claims to be inaccurate illustrates fundamental flaws in its conduct of the investigation. First, Defendants present no evidence from those hearings that address the specific allegations in the Amended Complaint. Second, the testimony of the witnesses in those hearings was not subjected to cross-examination, principally as a result of Speaker Pelosi's unprecedented refusal to appoint to the Select Committee the Members nominated by the Minority Leader.[1] More troubling is the Select Committee's failure to disclose testimony that it obtained from a witness who contradicted some of the public witnesses and the Select Committee's narrative. Ex. B attached (Declaration of Heidi Stirrup).

---

[1] Cross-examination is "the best method yet devised for testing trustworthiness of testimony." *Sartor v. Arkansas Nat. Gas Co.,* 321 U.S. 620, 628 (1944).

If a presidential election had indeed been altered by such irregularities or fraudulent voting as alleged in the Amended Complaint, it is indisputably relevant to the Select Committee's inquiry into the events of January 6, 2021, at the Capitol. The Amended Complaint alleges, accurately, that the Select Committee has refused to investigate recent evidence of election fraud and other irregularities that could have affected the outcome of the 2020 presidential election. ¶¶ 6-11, 40-55.[2] Those allegations are particularized and based on several extensive investigations of election irregularities. Undertaking an investigation of the alleged irregularities does not constitute a condonation of the violence that occurred on January 6. Indeed, such an investigation is essential to assuring public confidence in our elections that is fundamental to our Republic. As the Wisconsin Supreme Court stated just last week in its opinion finding that the widespread use of unmanned drop boxes during the 2020 election violated Wisconsin election law:

> *If the right to vote is to have any meaning at all, elections must be conducted according to law*. Throughout history, tyrants have claimed electoral victory via elections conducted in violation of governing law…. Even if citizens of such nations are allowed to check a box on a ballot, they possess only a hollow right. Their rulers derive their power from force and fraud, not the people's consent.
>
> * * *
>
> The right to vote presupposes the rule of law governs elections. If elections are conducted outside of the law, the people have not conferred their consent on the government. Such elections are unlawful and their results are illegitimate. 'If an election . . . can be procured by a party through artifice or corruption, the Government may be the choice of a party for its own ends, not of the nation for the national good.' John Adams, <u>Inaugural Address in the City of Philadelphia</u> (Mar. 4, 1797), <u>reprinted in Inaugural Addresses of the Presidents of the United</u>

---

[2] A filing in *Eastman v. Thompson,* No. 8:22-cv-00099 (C.D.Cal. May 31, 2022) (Doc. 354) (Plaintiff's Reply Brief in support of Privilege Assertions) reviews the evidence of election fraud and irregularities in the 2020 election. (Ex. C attached.) An updated report prepared by John R. Lott, Jr., the U.S. Department of Justice Senior Advisor on Research and Data, after the 2020 election, *A Simple Test for the Extent of Vote Fraud with Absentee Ballots in the 2020 Presidential Election: Georgia and Pennsylvania Data,* was plainly available to the leadership of the Department in the weeks following the 2020 election (attached as Ex. D).

<u>States</u> at 10 (1989).

*Teigen v. Wisconsin Elections Commission*, 2022 WI 64, ¶ 23, 2022 WL 2565599, at *6 (Wis. 2022) (emphasis added).

The Select Committee has also refused to address significant issues that have been brought to its attention. One of the Minority Leader's nominees to serve on the Select Committee, Representative Jim Banks, was rejected by Speaker Pelosi. The Republican Members of the House of Representatives are conducting their own *ad hoc* investigation of the events of January 6. He has published questions that he contends must be answered if the American public is to have confidence in the Select Committee's investigation:

1. How is it possible that the Capitol Police were half-staffed on January 6?

2. Why were the Capitol Police under-equipped?

3. Why were some officers forced to face down a riot without helmets?

4. Why were the Capitol Police never trained to handle a riot, even after the riots of 2020?

5. Did Speaker of the House Nancy Pelosi communicate with the House Sergeant-at-Arms on January 6 or in the days leading up to the riot?

6. Why didn't the Capitol Police's intelligence unit raise the alarm about potential violence?

7. Why did the FBI deploy commandos to Quantico on January 3, with shoot-to-kill-authority, but fail to send USCP a single threat assessment or intelligence bulletin?

8. Was Speaker Pelosi involved in the decision to delay National Guard assistance on January 6? [3]

Other questions have been posed to the Committee but not addressed:

How many undercover personnel or informants were in the crowd January 6?

---

[3] M. Tapscott, "Eight Key Questions the January 6 Committee Will Not Answer and One Nancy Pelosi Can't Avoid*," PJ Media* (Jun. 9, 2022).

What part, if any, did they play in planning the entry into the Capitol before or on January 6, or in encouraging the crowd to do so?

Did any stray from being accessories after the fact into Agent Provocateurs?[4]

The unbalanced character of the Select Committee and its one-sided approach to the investigation makes such an examination by this Court of the evidence of election fraud and irregularities imperative.

## **ARGUMENT**

The Select Committee's memorandum and the decisions of this Court and the District of Columbia Circuit on which it principally relies reflect a dramatic departure from the decisions of the Supreme Court arising from the McCarthy-era congressional investigations in *Watkins v. United States,* 354 U.S. 178 (1957), *Quinn v. United States,* 349 U.S. 155 (1955), and *United States v. Rumely,* 345 U.S. 41 (1953). Those opinions reflect a heightened value associated with rights guaranteed by the Bill of Rights. The following excerpt from the *Watkins* opinion, which is quoted in the Amended Complaint, is particularly noteworthy:

> Abuses of the investigative process may imperceptibly lead to abridgement of protected freedoms. The mere summoning of a witness and compelling him to testify, against his will, about his beliefs, expressions or associations is a measure of governmental interference…. Those who are identified by witnesses and thereby placed in the same glare of publicity are equally subject to public stigma, scorn and obloquy. Beyond that, there is the more subtle and immeasurable effect upon those who tend to adhere to the most orthodox and uncontroversial views and associations in order to avoid a similar fate at some future time.

*Watkins* at 197-98. Contrast that acknowledgement in *Watkins* that First Amendment rights are violated by the mere compulsion of testimony about a witness's beliefs and associations with this statement in the Select Committee's memorandum: "The D.C. Circuit further instructed that the

---

[4] P. VanBuren, "Questions for the January 6 Committee," *Ron Paul Institute* (Feb. 1, 2022).

judiciary may not interfere with Congressional investigations, even where it was alleged that Members of Congress were proceeding improperly." Opp. Mem. at 12.

Regarding the Speech or Debate Clause, the Select Committee's position cannot be reconciled with the *en banc* decision in *McSurely v. McClellan,* 553 F.2d 1277 (D.C. Cir. 1976). In *McSurely,* a case involving a Fourth Amendment challenge, the D.C. Circuit held that congressional action "is not entirely foreclosed by legislative immunity." *Id.* at 1284. The D.C. Circuit relied on the proposition that: "As with taking a bribe, resort[ing] to criminal or unconstitutional methods of investigative inquiry is 'no part of the legislative process or function; it is not a legislative act.' *United States v. Brewster,* 408 U.S. 501, 526 (1972)." *Id.* at 1288. *McSurely* was decided more than a year after *Eastland v. United States Servicemen's Fund*, 421 U.S. 491 (1975), the principal authority upon which the Select Committee relies. The D.C. Circuit in *McSurely* did not adopt the proposition that the Select Committee attributes to *Servicemen's Fund*, namely, that courts have no jurisdiction to interfere with a congressional investigation. *McSurely* 553 F.2d 1283-88; *id.* at 1337-39 (Danaher, J., dissenting).

The recent decisions on which the Select Committee relies have concluded that the protections stated in absolute and unequivocal terms in the First and Fourth Amendments are tentative and dispensable, while the congressional power of Congress to investigate is absolute and non-reviewable. Mr. Olsen contended in his opening memorandum that the Select Committee's position is contrary to the history of the Constitution: the Bill of Rights was ratified **after** the ratification of the Speech or Debate Clause. Plt's Mem. at 18-19 n.4. The reasoning of those opinions cited by the Select Committee would preclude courts from invalidating laws enacted by Congress as violations of the Constitution.

The Select Committee argues that the Plaintiff's claims that the Subpoena violates the First and Fourth Amendments, exceeds the authority granted by House Resolution 503, violates the separation of powers by supporting a law enforcement function that is the province of other branches, is in furtherance of an unauthorized purpose, and violates the attorney-client privilege do not state a valid cause of action. Each of Mr. Olsen's claims individually and collectively is well-pled and establishes his likelihood of prevailing. Only one valid claim is needed for that purpose. The injury to his constitutional rights is irreparable. Given the gravity of the injury to Mr. Olsen's rights and the damage that would be done to the attorney-client privilege by such a precedent as allowing the breach of the privilege, the balance of interests weighs in favor of Mr. Olsen. There is no public interest in allowing the Select Committee to violate the Constitution.

The Amended Complaint also asserts that the Select Committee, whose members attempted unsuccessfully to impeach former President Trump, has intentionally undertaken an investigation to establish what they failed to achieve in the impeachment effort, which is that former President Trump is guilty of a crime that would disqualify him from seeking office in the future. That is not merely about discerning the motivation of its members but rather identifying a declared purpose of the investigation. In this case, the purpose of developing a criminal case invalidates the Subpoena. *Trump v. Mazars USA, LLP,* 140 S. Ct. 2019, 2034-36 (2020).

There have been repeated leaks by the Select Committee's members, staff, or investigators.  *See* Memorandum in Support of Plaintiff's Motion for Preliminary Injunction at 10 n.1.  The hearings have been produced for television in a manner that excludes opposing evidence and points of view. This demonstrates that information is being released selectively merely for the sake of exposure to support the partisan nature of the Select Committee, which is another reason for the invalidation of the subpoena. *See Id.*

Page **10**

A.      **Mr. Olsen's First Amendment Claim is Well-Pled.**

The Select Committee offers three reasons why the Court should dismiss the First Amendment claim: the claim is barred by the Speech or Debate Clause, the allegations lack the required specificity, and Olsen's associational interests are outweighed by the Select Committee's interests. Opp. Mem. at 1-2. The D.C. Circuit's *en banc* decision regarding the Speech or Debate Clause in *McSurely* is binding on this Court and defeats the first reason. 553 F.2d at 1283-88. Count II of the Amended Complaint satisfies the pleading requirements established by *Ashcroft v. Iqbal,* 556 U.S. 662, 677-81 (2009). At the pleading stage, a claim cannot be dismissed on the grounds that a plaintiff's interests are outweighed by the interests of the governmental defendant because such balancing requires an examination of evidence. *Lahovski v. Rush Twp.,* 441 F. Supp. 3d 43, 58-59 (M.D.Pa. 2020); *see Louisiana St. Conf. of the NAACP v. Louisiana,* 490 F. Supp. 3d 982, 1005 (M.D.La. 2020) (Complaint need not identify association members in order to establish standing.).

Mr. Olsen challenges the use of an atextual balancing test to evaluate his First Amendment claims. Allowing a governmental official or entity to frustrate the exercise of those rights by insisting to a court that the governmental interest outweighs the interests of the citizen in free speech and free association enables the court to make what is necessarily a value judgment about the relative importance of the competing interests. In free association cases, the balancing test forces a plaintiff to suffer the very injury that the First Amendment prohibits the government from inflicting by, *inter alia*, requiring the plaintiff to disclose the identities of his associates and the speech they wish to convey anonymously.  The *Watkins* opinion highlights the inherent violation of the First Amendment that occurs when a congressional committee compels the disclosure of information about anonymous associations.

Unlike the treatment of a First Amendment claim in *Watkins,* the *Servicemen's Fund* Court refused to apply a balancing test and summarily dismissed the freedom of association and freedom of the press claims based on "the absolute nature of the speech or debate protection." *Servicemen's Fund,* 421 U.S. at 509. The Select Committee argues that "Mr. Olsen's First Amendment claim is squarely foreclosed by *Eastland v. United States Servicemen's Fund.*" Opp. Mem. at 23. That contention cannot be squared with the *en banc* decision in *McSurely.* 553 F.2d at 1283-88.

       *Servicemen's Fund* distinguished *Watkins*, which sustained a constitutional claim against a congressional committee, on the ground that *Watkins* involved a criminal prosecution where "any interference with congressional action had already occurred." 421 U.S. at 509 n.16. That reasoning is at odds with the language of the Speech or Debate Clause, which provides that "for any Speech or Debate in either House, [Members] shall not be questioned in any other Place." The issue there was the legitimacy of the exercise of congressional power in serving the subpoena that compelled witness testimony. *Watkins,* at 182. In both cases, however, the challenge was to a legislative act, which is not the case here.

       The Select Committee argues, alternatively, that it should prevail even under a balancing test because any First Amendment interest that Mr. Olsen might assert would be "greatly outweighed by the Select Committee's interest here." Opp. Mem. at 23. In contending that the Amended Complaint's "conclusory assertion" of the chilling effect of the compelled disclosure does not satisfy the specificity requirement, the Select Committee insists that Mr. Olsen disclose the very information that he claims is protected from compulsory disclosure by the freedom of association. *See Louisiana St. Conf. of the NAACP,* 490 F. Supp. 3d at 1005; *Agnew v. St. Louis County,* 150 F. Supp. 3d 989, 1002-03 (E.D. Mo. 2020).  This chilling effect is conclusively

demonstrated by the fact that the Director of National Intelligence ("DNI") and the Department

of Homeland Security[5] ("DHS") have announced that any statements about election fraud in

recent elections *will be investigated and prosecuted as domestic terrorism*. Such shocking

government overreach strikes at the heart of the First Amendment. Mr. Olsen cannot be required

to demonstrate more. Such threats on their face are evidence of the unconstitutional chilling

effect that the Select Committee will produce if it is able to compel Plaintiff to disclose the

identities of his clients and associates and the details of their communications.

      Although the Select Committee may not be directly responsible for the intimidation by

the DNI and DHS of Americans who sincerely believe that election fraud and gross irregularities

occurred in the 2020 elections, its attempt through the Subpoena to compel Plaintiff to produce

the identities of his clients and associates and to produce their communications is itself

unconstitutionally chilling because it is being ordered under conditions that necessarily affect

those who wish to remain anonymous to avoid retaliation regardless of how that retaliation is

likely to occur. The chilling effect of the Select Committee's Subpoena is the likelihood of

negative consequences for Plaintiff and his associates from whatever actors use the forced

disclosures to retaliate against them. Moreover, the Select Committee itself has used disclosures

to proceed against individuals who have been identified in interviews, testimony, and documents

it has obtained.

---

[5] In June 2021, U.S. Attorney General Merrick Garland publicly condemned "baseless" voter
fraud claims. independent.co.uk/news/world/Americas/us-politics/merrick-garland-voting-rghts-
audits. In January 2022, he established a special unit focused on domestic terrorism.
https://www.abc.go.com/wireStory/justice-dept-creating-unit-focused-domestic-terrorism. He
has refused to rescind a memorandum that asked the FBI to probe threats directed to local school
boards. https://www.usnews.com/news/education-news/articles/2021-10-27/garland -refuses-to-
rescind-memo-asking-fbi-to-probe-school-board-threats.

### 1.     The Speech or Debate Clause is not a Bar.

Mr. Olsen challenges the extension of the Speech or Debate Clause beyond its text (*i.e.,* "speech" and "debate") to immunize all legislative acts that violate the Constitution. Congressional speech by itself does not violate First and Fourth Amendment rights and is shielded from challenge, but legislative acts can violate individual rights and are not immunized. If all actions taken within "the legislative sphere" were immunized, the Clause would logically prohibit courts from exercising jurisdiction over a claim of a constitutional violation by the ultimate legislative act, which is an enactment of a law. This would be contrary to the established principle of judicial review of congressional actions. *McCulloch v. Maryland,* 17 U.S. 316, 423 (1819); *see also Bailey v. Drexel Furniture Co., Child Labor Tax Case,* 259 U.S. 20, 27 (1922). It would prohibit the courts from invalidating legislation that violates the guarantees of the Bill of Rights, as the Supreme Court has done in association rights challenge. *Citizens United v. FEC,* 558 U.S. 310 (2010).

The Select Committee's reliance on *Servicemen's Fund* is misplaced. As the District of Columbia Circuit Court held in *McSurely,* assertions of violations of the Bill of Rights are "not entirely foreclosed by legislative immunity." *McSurely* at 1284. The *en banc* opinion in *McSurely* noted that the Supreme Court has taken

> 'a decidedly jaundiced view towards extending the Clause so as to privilege illegal or unconstitutional conduct beyond that essential to foreclose executive control of legislative speech or debate and associated matters such as voting and committee reports and proceedings.' *Gravel v. United States*, 408 U.S. at 620.

553 F.2d at 1287.

### 2.     The Allegations in Count II Are Adequately Specific.

The Amended Complaint alleges injury to the association rights of Mr. Olsen in ¶¶ 14-17.

The Select Committee argues that those allegations are "conclusory." Opp. Mem. at 23. This

ignores the description in *Watkins* of the chilling effect on those who associate anonymously

for the purpose of political expression from "[t]he mere summoning of a witness and

compelling him to testify, against his will, about his beliefs, expressions or associations…."

*Watkins* at 197.  The mere issuance of the Subpoena constitutes an unconstitutional chilling

effect, according to *Watkins.* But the Amended Complaint alleges more.

The Select Committee ignores the allegations in ¶¶ 12-14 of the Amended Complaint

regarding the chilling effect of the threatening guidance statements issued by the Director of

National Intelligence and the Secretary of Homeland Security that those who espouse

"narratives of fraud in the recent election" will be considered "domestic terrorists."

Mr. Olsen is not required to identify those with whom he has associated in investigating

election fraud. *See Illinois Opportunity Project v. Bullock,* 2020 U.S. Dist. LEXIS 1053, * 5-6

(D. Mt. 2020). To compel him to disclose that information would cause the very injury that the

First Amendment was intended to prohibit.

### 3.     Balancing Necessarily Requires Consideration of Evidence.

Dismissal is not proper when a complaint asserts claims that can be adjudicated only

after conflicts over material facts are resolved by a review of evidence related to those claims.

*Lahovski* at 58-59. If the competing facts relate to a balancing test, the parties must be given the

opportunity to adduce facts for the court's consideration in ruling on which interests should

prevail.

**B.**      **Mr. Olsen's Fourth Amendment Claim is Well-pled.**

The Fourth Amendment contains no exemption for congressional committees. Its requirements apply to all governmental actors. *Watkins* at 188. The Supreme Court has not articulated the standard imposed on congressional committees when they compel testimony or the production of documents. *Mazars* at 2031-32. There is no justification for a different standard for those committees than for other governmental actors. *See Watkins* at 188.

Defendants argue that the Subpoena is not a warrant because "no search has been authorized or conducted." Mr. Olsen need not wait until a search has been conducted to challenge whether it is a violation of the Fourth Amendment. Similarly, the nature of the document does not depend on whether the search has been conducted. House Resolution 503 provides:

> Section 5(c)(4) The chair of the select Committee may authorize and issue subpoenas … including for the purpose of taking depositions.
>
> (5) The chair of the Select Committee is authorized to compel by subpoena the furnishing of information by interrogatory.
>
> (6)(A) The chair of the Select Committee, upon consultation with the ranking minority member, may order the taking of depositions, including pursuant to subpoena….

The authorizing language is unambiguous. A congressional committee subpoena can be issued and enforced outside of the judicial process and without the approval of a judge or magistrate. *Anderson v. Dunn,* 19 U.S. 204, 230-31 (1821); *see Mancusi v. DeForte,* 392 U.S. 364, 370-71 (1968) (subpoena not a valid warrant because not issued by a neutral and detached magistrate); *Barry v. United States ex rel. Cunningham,* 279 U.S. 597, 613-14 (1929); *Marshall v. Gordon,* 243 U.S. 521, 538 (1917); *see generally In re Campbell,* 166 U.S. 661 (1897).

The Supreme Court has stated:

The Fourth Amendment proscribes all unreasonable searches and seizures, and it is a cardinal principle that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment— subject only to a few specifically established and well-delineated exceptions."

*Mincey v. Arizona,* 437 U.S. 385, 390 (1978).

The Select Committee argues that the "neutral and detached magistrate" requirement does not apply here because "no search has been authorized or conducted." Opp. Mem. at 25. At the same time, it contends that Congress has authorized the subpoena, and the House has the power to enforce it. *Anderson* at 230-31. Thus, the congressional committee subpoena in this case and a warrant are functionally equivalent: they differ in this case in name only.

The subpoena's scope exceeds the jurisdiction of the Select Committee, which is limited to investigation of the events of January 6 and the factors that contributed to the attack on the Capitol. Mr. Olsen is compelled to produce documents and communications related broadly to anything involving, *inter alia*, his work in support of and representation of clients in cases related to election fraud for the period September 1, 2020 *through the present*, far beyond the events of January 6 that the Select Committee is purportedly investigating. Subpoena at 3.

The Amended Complaint states in ¶ 75:

The conjunction of Plaintiff's First Amendment rights and Fourth Amendment rights present a hybrid situation in which those rights reinforce each other, making the subpoena's intrusive demands qualitatively more offensive to the fundamental law that binds the House and its committees.

The decisions have been uniformly in agreement with this proposition. *Lo-Ji Sales v. New York,* 442 U.S. 319, 329 (1979); *Stanford v. Texas*, 379 U.S. 476, 484-85 (1965); *Marcus v. Search Warrant of Property,* 367 U.S. 717 (1961).

C.    **The Select Committee's Investigation is an Unauthorized Law Enforcement Undertaking.**

The Select Committee fails to rebut the allegations in Count VI, which assert that the investigation of the Select Committee has from its inception involved a law enforcement function that is the exclusive responsibility of the executive branch. Congressional committees "cannot inquire into matters which are within the exclusive province of one of the other branches of the Government." *Barenblatt v. United States,* 360 U.S. 109, 112 (1959).

Every member of the Select Committee voted to impeach former President Trump.[6] Having failed to obtain a conviction on the bill of impeachment, which would have barred Mr. Trump from seeking election to office in the future, the Select Committee set as an objective the development of sufficient evidence to provide to the Department of Justice to convict Mr. Trump and, therefore, accomplish what the unsuccessful impeachment prosecution failed to achieve. This does not entail the examination of the motivation of the members but rather recognition of the Select Committee's stated purpose.

Paragraph 117 challenges the issuance of the Subpoena for Mr. Olsen's papers and to testify before the Select Committee as part of an unauthorized and unconstitutional pursuit of a function that is assigned exclusively to the executive branch. This issue was addressed in *McGrain v. Daugherty*, 273 U.S. 135 (1927). There, the congressional investigation was held to be appropriate and not a violation of the separation of powers because "it might possibly disclose crime or wrongdoing…." *Id.* at 179-80. In this case, the disclosure of criminal conduct (and the intentional development of proof of crime or wrongdoing) is not a mere possibility as the investigation proceeds but is the avowed purpose of the investigation.

---

[6] *See* Clerk of the U.S. House of Representatives Roll Call Vote of January 13, 2021, *available at* https://clerk.house.gov/Votes/202117.

What is involved in this case is not mere speculation about the motivation of legislators but rather the fact of the declared purpose of a congressional investigation to prepare a criminal referral regarding former President Trump to the U.S. Department of Justice for prosecution, which violates the separation of powers and, therefore, invalidates the subpoena. *Mazars* at 2032.

Count VI of the Amended Complaint also asserts that the Subpoena is unenforceable because it is predicated on the predetermination by the House that all claims of election fraud are themselves fraudulent and on the Select Committee failure to investigate those claims. Such a predetermination serves no legitimate legislative purpose. Amended Complaint ¶ 118. In prejudging an issue assigned to the Select Committee by House Resolution 503 and compelling Mr. Olsen to provide documents and to testify about election fraud when the House had already decided and formally declared in the resolution that election fraud had not occurred before any investigation by the House had been conducted, the House exceeded its authority and undertook an investigation that had no legitimate legislative purpose. The Subpoena, therefore, is invalid and unenforceable.

The Amended Complaint requests, among other things, that the Court enter a declaratory judgment that the actions of Defendant Thompson in issuing the subpoena and the Select Committee in conducting the investigation were unlawful, invalid, and *ultra vires* and served no legitimate purpose because: those actions constitute law enforcement functions that a congressional committee may not undertake; that credible evidence of election fraud and other illegal activities altered the outcome of the 2020 election has been produced to legislatures in Arizona, Georgia, Michigan, Pennsylvania, and Wisconsin; the Select Committee has failed to conduct an unbiased investigation into whether the occurrence of illegal voting or election fraud in the 2020 presidential election was an influencing factor that contributed to the January 6, 2021

breach of the Capitol; and that that the Subpoena does not serve a legitimate legislative purpose. Defendants have failed to show that Count VI does not state a valid claim.

**D.**      **The Select Committee's Subpoena is in Support of an Investigation that Has Been Disclosing Information for the Sake of Disclosure alone.**

As referenced above, there have been repeated leaks from the investigation. The hearings have been produced for television in a manner that discloses only information that supports its partisan narrative. *Supra,* at 6. *See also* Plt's Mem. at 12-13 n. 1. The Select Committee has suppressed opposing evidence and points of view. *Supra,* at 1-2 & Ex. B. These facts demonstrate that information is being released selectively merely for the sake of exposure to support its predetermined position, which is another reason for the invalidation of the subpoena. *Mazars* at 2032.

**E.**      **The Select Committee's Subpoena Violates the Attorney-Client Privilege Asserted by Mr. Olsen on Behalf of Clients.**

"[R]ecipients of legislative subpoenas … retain common law and constitutional privileges with respect to certain materials, such as attorney-client communications…." *Mazars* at 2032. Mr. Olsen has committed to providing a privilege log and to submitting pertinent documents for *in camera* review by the Court, if required.  Plt's Mem. at 11.

**F.**      **A Preliminary Injunction Should Be Granted.**

**1.**      **There is a Likelihood of Success.**

Mr. Olsen has established that each of his claims is well-pled. Any one of those claims may demonstrate likelihood of success. It is not necessary to establish that his prospect of ultimately prevailing on his claims is greater the 50 percent. *Davis v. Pension Benefit Guar. Corp.,* 571 F.3d 1288, 1292 (D.C. Cir. 2009).

**2.**      **Mr. Olsen Will Suffer Irreparable Injury Without the Injunction.**

Even a temporary intrusion into the free speech and free association rights of a plaintiff causes irreparable injury. *Elrod v. Burns,* 427 U.S. 347, 373 (1976). The Supreme Court in *Roman Catholic Diocese of Brooklyn v.* Cuomo, 141 S. Ct. 63 (2020) did not limit the holding in *Elrod.* It simply recited the facts that the Diocese was able to establish. Lower courts have not required more than a showing that association rights are likely to be violated to warrant a grant of preliminary relief. *VoteAmerica v. Schwab*, 2021 U.S. Dist. LEXIS 223601, at *20-21 (D.Kan. 2021); *Americans for Prosperity v. Grewal*, 2019 U.S. Dist. LEXIS 170793, at *58-59 (D. NJ. 2019); *see also Tree of Life Christian, Sch. v. City of Upper Arlington*, 2012 U.S. Dist. LEXIS 32205, at *7-9 (S.D. Oh. 2012) (holding that requiring discovery of membership lists infringes on the First Amendment, and the party opposing discovery need only show "an arguable First Amendment infringement" to shift the burden to the party seeking discovery to show a greater interest. "Importantly, the party seeking the discovery must show that the information sought is highly relevant to the claims or defenses in the litigation-a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)").

### 3.      The Balance of Equities Weighs in Favor of Mr. Olsen.

Mr. Olsen's interest in preserving the anonymity of his associates carries the highest value, as it is essential to the protection of free speech and free association. *See VoteAmerica v. Schwab,* 2021 U.S. Dist. LEXIS 223601 (D. Kan. 2021). The weight of that interest and the interest in not allowing unconstitutional and unlawful conduct by Congress and its committees overrides the Select committee's interests in obtaining information from Mr. Olsen. In *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995), the Court stated:

> Anonymity is a shield from the tyranny of the majority. . . . It thus exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation — and their ideas from suppression — at the hand of an intolerant society. The right to remain anonymous may be abused when it shields

fraudulent conduct. But political speech by its nature will sometimes have unpalatable consequences, and, in general, our society accords greater weight to the value of free speech than to the dangers of its misuse.

*Id.* at 357. The value of First Amendment protections, as underscored in *Watkins*, and the importance of preserving the attorney-client privilege outweigh the interests of the Select Committee, which has weakened its claim to the weight it asserts because of its excessive partisanship and one-sided procedures which are inconsistent with a search for truth.

### 4.     The Public Interest Weighs in Favor of Upholding the Constitution.

For many of the reasons that strike a balance of equities in favor of Plaintiff, the public interest weighs in his favor. There is no public interest in allowing the unconstitutional conduct of the Select Committee to persist.  *See League of Women Voters of the U.S. v. Newby,* 838 F.3d 1,12 (D.C. Cir. 2016); *Louisiana v. Becerra,* 2022 WL 16571, * 15 (W.D. La. 2022).

### CONCLUSION

The court should grant Plaintiff's Motion for Preliminary Injunction.

Respectfully submitted,

**KURT B. OLSEN**

By_____/S/_____

Patrick M. McSweeney
**MCSWEENEY, CYNKAR & KACHOUROFF, PLLC**
Patrick M. McSweeney*
Christopher I. Kachouroff*
13649 Office Place, suite 101
Woodbridge, VA 22192
Telephone: (804) 937-0895
patrick@mck-lawyers.com
chris@mck-lawyers.com

Charles Burnham, Esq.
DC Bar # 1003464
**BURNHAM & GOROKHOV, PLLC**
1424 K St. NW Suite 500
Washington, D.C. 20005
202.386.6920
202.390.7587 F
charles@burnhamgorokhov.com

* Admitted *pro hac vice*

*Counsel for Plaintiff*

Page **22**