# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KURT B. OLSEN, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 1:22-cv-00807 |
| NANCY PELOSI, et al. | ) |
| Defendants. | ) |

## DECLARATION OF HEIDI STIRRUP

I, Heidi Stirrup, state the following as my declaration pursuant to 28 U.S.C. §1746:

1. The facts in this affidavit are based on my personal knowledge.

2. I am 66 years old, a citizen of the United States of America and a resident of the Commonwealth of Virginia.

3. I was subpoenaed to appear before the January 6th Select Committee and did so on April 25, 2022.

4. I was deposed by John F. Wood, Senior Investigative Counsel for the Select Committee and of counsel to Vice Chair Liz Cheney. Also present in the deposition room for the Committee were the following people: Joshua Roselman, Investigative Counsel, and Grant Saunders, Professional Staffer to the Committee.

5. Prior to the deposition, I specifically requested access to the correspondence between the Committee and the Department of Justice. Even though disclosure of these communications is prescribed by 28 CFR § 16.22 (a), my request was denied. Under 28 CFR § 16.24 (c) and (d), the Committee is required to give me a summary of the expected testimony that discloses the nature and relevance of the information sought. I asked for this summary which was never given to me.



1

6. My testimony was that in late October of 2020, I transitioned from my liaison role at Health and Human Services to serve as White House liaison at the Department of Justice in preparation for President Trump's second term in office.

7. During the deposition, Mr. Wood asked whether I had discussions about the Department's election related investigations with Department officials. I testified that I did have a conversation with Chief of Staff and Senior Counselor to the Attorney General, William Levi, and the Attorney General William Barr.

8. I testified that as the White House liaison, I was in an appointed position where I felt free to express to my fellow political appointees about my concern about the highly irregular and potentially fraudulent activity in the 2020 General Election.

9. I also testified about a conversation I had with Mr. Levi on Monday, November 9, 2020, about what he or anyone else at the Department of Justice was doing to investigate the potential election fraud.

10. As I explained to Mr. Wood who was questioning me, Mr. Levi told me he worked all weekend on a memo, that he was clearly upset and extremely agitated about the amount of time he had to devote over the weekend to questions concerning the election, and he complained that he had missed spending time with family.

11. Mr. Levi, told me that the memo he wrote was intended to provide U.S. Attorneys with the authority and procedures they could rely on to investigate claims of election fraud if such claims were brought to them.

12. I asked Mr. Levi what investigative activity had taken place. He claimed at one point that "they looked into every allegation that was brought forward and found no evidence of fraud." He kept referring me to his weekend memo. Again, this was just days after the election when accounts of highly irregular activity were still coming out.

13. While I was surprised and relieved to find out that the Department of Justice was at least doing something, I was concerned because I had not seen any investigative activity by the top law enforcement agency in the nation. I wanted to know specifically what was being done.

14. I also stated that Mr. Levi, sensing my frustration, asked whether I wanted to meet with Attorney General Barr directly. I wanted to be reassured that the Department of Justice was doing everything within its power to do so. I wanted to hear from the Attorney General himself.

15. I was given the opportunity to meet with Attorney General Barr (also on November 9th and after my meeting with Mr. Levi.) I met with both Attorney General Barr and Mr. Levi.

16. Again, I testified that I wanted to know whether there was any activity other than the creation of Mr. Levi's weekend memo. I was continuously hearing accounts about all kinds of concerning things which were said to occur in the November 2020 Election and wanted to know exactly what the Department was doing to investigate them.

17. I testified that I asked Attorney General Barr what was being done about the highly irregular election activities. When I specifically asked if the Department had done anything, Mr. Barr told me "no." He then told me, "There is no federal role in elections; they are run by the states. If fraud is brought to a U.S. Attorney, they have the authority to investigate." He assured me that no matter how much alleged fraud was brought forward, no investigation would take less than two years and the election would not be overturned.

18. I told him that I was not interested in overturning an election but rather was more concerned about what was being done to investigate the fraud allegations. It was clear to me then, during my deposition, and now that nothing was done.

19. The Committee also attempted to spring on me without any warning, a reporter's account in a book of what happened at the meeting which was apparently leaked by one of Attorney General Barr's secretaries or staff. This reporter, Jonathan Karl, never even spoke to me and the characterizations in his book were simply not true.

I swear and certify under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge.

Dated:  July 9, 2022  _____
Heidi Stirrup

Digitally signed by Heidi H Stirrup
DN: cn=Heidi H Stirrup, o, ou, email=votestirrup@comcast.net, c=US
Date: 2022.07.11 12:37:39 -04'00'