# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

KURT B. OLSEN,             **)**

                       **)**

          Plaintiff,       **)**

                       **)**

v.                         **)**        Case No. 1:22-cv-00807-CJN

                       **)**

NANCY PELOSI, in her official    **)**

capacity as Speaker of the United   **)**

States House of Representatives, et al.  **)**

                       **)**

                       **)**

         Defendants.      **)**

## PLAINTIFF'S OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS

Patrick M. McSweeney*
Christopher I. Kachouroff*
**MCSWEENEY, CYNKAR &
KACHOUROFF, PLLC**
13649 Office Place, suite 101
Woodbridge, VA 22192
Telephone: (804) 937-0895
patrick@mck-lawyers.com
chris@mck-lawyers.com

*Admitted pro hac vice*

Charles Burnham
DC Bar #1003464
**BURNHAM & GOROKHOV**
1424 K Street, Suite 500
Washington, D.C. 20005

Counsel for Kurt B. Olsen

## TABLE OF AUTHORITIES

**Cases**

*Americans for Prosperity Found. v. Bonta,* 141 S. Ct. 2373 (2021) ............................... 13, 18, 19

*Anderson v. Dunn,* 19 U.S. (6 Wheat.) 204 (1821)........................................................ 14

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) .......................................................................... 15, 16

*Bailey v. Drexel Furniture Co.* (*Child Labor Tax Case*)*,* 259 U.S. 20 (1922) ............... 9

*Barenblatt v. United States,* 360 U.S. 109 (1959) ......................................................... 21

*Barry v. United States ex rel. Cunningham,* 279 U.S. 597 (1929)................................. 14

*Buckley v. Valeo,* 424 U.S. 1 (1976) .............................................................................. 17

*Codd v. Velger,* 429 U.S. 624 (1977).............................................................................. 23

*Comm. on Judiciary v. Miers,* 558 F.Supp.2d 53 (D.D.C. 2008) ................................. 24

*Community-Service Broadcasting of Mid-America, Inc. v. FCC,*

    593 F.2d 1102 (D.C. Cir. 1978)............................................................................ 17

*Davis v. Passman,* 442 U.S. 228 (1979) ......................................................................... 6, 11

*Doe No. 1 v. Reed,* 561 U.S. 186 (2010)......................................................................... 17

*Doe v. McMillan,* 412 U.S. 306 (1973)............................................................................ 7

*Eastland v. U.S. Servicemen's Fund,* 421 U.S. 491 (1975) ............................................ 5, 6

*First Nat'l Bank of Boston,* 435 U.S. 765 (1978) ........................................................... 19, 20

*Gravel v. United States,* 408 U.S. 606 (1972) ................................................................ 7, 10

*Hutchinson v. Proxmire,* 443 U.S. 111 (1979) ............................................................... 7

*In re Grand Jury Proceeding,* 842 F.2d 1229 (11th Cir. 1988)..................................... 16

*Kilbourn v. Thompson,* 103 U.S. 168 (1880)................................................................... 6, 10

*Laird v. Tatum,* 408 U.S. 1 (1972).................................................................................. 15

*Liveright v. United States,* 347 F.2d 473 (D.C. Cir. 1965) .......................................................... 10

*Lo-Ji Sales v. New York,* 442 U.S. 319 (1979) ........................................................................... 12

*Louisiana v. Becerra,* 2022 WL 16571 (W.D. LA. 1/1/2022).................................................... 18

*Mancusi v. DeForte,* 392 U.S. 364 (1968)................................................................................... 14

*Marcus v. Search Warrant of Property,* 367 U.S. 717 (1961)...................................................... 12

*Marshall v. Gordon,* 243 U.S. 521 (1917).................................................................................... 14

*McCulloch v. Maryland,* 17 U.S. 316 (1819) ................................................................................. 9

*McGrain v. Daugherty,* 273 U.S. 135 (1927) ..................................................................... 6, 9, 22

*McPhaul v. United States,* 364 U.S. 382 (1960)........................................................................... 12

*McSurely v. McClellan,* 553 F.2d 1277 (D.C. Cir. 1976) .......................................................... 5, 7, 8

*Mincey v. Arizona,* 437 U.S. 385 (1978)...................................................................................... 14

*Nat'l Treasury Emps. Union v. United States,* 101 F.3d 1423 (D.C. Cir. 1996) .......................... 18

*Pollard v. Roberts,* 283 F.Supp. 248 (D.Ark. 1968).................................................................... 16

*Powell v. McCormack,* 396 U.S. 486 (1969) ............................................................................. 7, 9

*Senate Permanent Subcomm. v. Ferrer,* 199 F. Supp. 3d 125 (D.D.C. 2016)....................... 15, 18

*Shelton v. United States,* 327 F.2d 601 (D.C. Cir. 1963)............................................................. 10

*Stanford v. Texas*, 379 U.S 476 (1965)........................................................................................ 12

*Tenn. Wine & Spirits Retailers Ass'n v. Thomas,* 139 S. Ct. 2449 (2019) ................................. 11

*Trump v. Deutsche Bank AG,* 943 F.3d 627 (2019)................................................................ 13, 21

*Trump v. Mazars USA, LLP,* 140 S.Ct. 2019 (2020) ...................................................... 8, 13, 21, 24

*United States v. Brewster,* 408 U.S. 501 (1972) ............................................................................ 6

*United States v. Johnson,* 383 U.S. 169 (1966) ......................................................................... 6, 9

*United States v. Reinecke,* 524 F.2d 435 (D.C. Cir. 1975) .......................................................... 10

*United States v. Rumely,* 345 U.S. 41 (1953) ................................................................... 10

*Watkins v. United States,* 354 U.S. 178 (1957) ................................................... 11, 13, 16

*Wisconsin v. Constantineau*, 400 U.S. 433 (1971) ....................................................... 23

**Resolutions**

House Resolution 503 (117th Cong., 1st Sess. 2021) ................................................... 15

**INTRODUCTION**

Defendants have moved to dismiss the Amended Complaint, relying on the Speech or Debate Clause of the Constitution. They challenge each of Plaintiff's claims as failing to state a cause of action. Defendants' arguments are without merit. Legislative immunity does not shield Defendants from an action challenging their violations of the provisions of the Bill of Rights, the separation-of-powers provisions, or the attorney-client privilege and the work product doctrine. Nor are Defendants immunized when their actions exceed the authority that they have been granted or when there is no legitimate legislative purpose served by the particular action undertaken, such as the issuance of a subpoena. As demonstrated below, Plaintiff claims are well-pled.

**FACTUAL BACKGROUND**

Defendants devote most of their discussion of the facts of this case to matters that do not relate directly to the issuance of the Subpoena. The legitimacy of the Select Committee's investigation does not assure the legitimacy of the Subpoena, which compels the disclosure of information concerning Plaintiff's legal efforts to investigate election fraud at issue in multiple pending and anticipated cases and to challenge actions of several States that violated the Elector Clause of the Constitution. Those efforts are protected by, *inter alia*, the First Amendment. Further, the Subpoena demands information from Plaintiff related to an issue that the Select Committee has already decided as evidenced by its public statements in court filings as well as statements by members of the Select Committee. Indeed, this fact is illustrated by the fact that in the face of the detailed allegations pled at ¶¶ 6-11 and 40-55 of the Amended Complaint, the Select Committee completely ignored those allegations in its opposition to Plaintiff's motion for a preliminary injunction stating simply that Plaintiff "continues to peddle debunked claims of

election fraud." Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction and Defendants' Motion to Dismiss at 1 (Doc. No. 22) (hereinafter "Opp. Mem." .).  Contrary to Defendants' statement, these allegations have never been adjudicated or "debunked."  The Select Committee refuses to investigate such facts, despite the duty imposed by House Resolution 503 to investigate the influencing factors that led to the January 6, 2021, events at the Capitol, namely whether the claims of election fraud and irregularities in the 2020 presidential election were baseless or supported by the evidence.

## ARGUMENT

**A.   The Speech or Debate Clause is no bar to the claims in this case.**

Defendants rely on the Speech or Debate Clause in requesting dismissal of the Amended Complaint in its entirety. Their argument is contrary to constitutional history, the traditional construction of the separation-of-powers provisions of the Constitution, and the decision in *McSurely v. McClellan,* 553 F.2d 1277 (D.C. Cir. 1976) (*en* banc).

     **1.   The Speech or Debate Clause has not been consistently construed as an absolute bar to claims such as those pled in the Amended Complaint.**

The rationale for Defendants' argument for dismissal of the Amended Compaint is that the issuance of the Subpoena was an act "within the legitimate legislative sphere," and is shielded from challenges such as this because the Speech or Debate Clause (the "Clause") raises an "absolute bar to interference" by a court. Opp. Mem. at 8 (citing *Eastland v. U.S. Servicemen's Fund,* 421 U.S. 491, 503-04 (1975). Defendants represent that "[t]he consistent

decisions of the Supreme Court and D.C. Circuit mandate… dismissal of the Amended Complaint." Opp. Mem. at 10. That statement is demonstrably false.[1]

Inconsistency has, from the beginning, characterized the Supreme Court's construction of the Clause as a bar to claims against legislators. Indeed, the Supreme Court expressed doubt in the first case in which the Clause was considered, *Kilbourn v. Thompson,* 103 U.S. 168 (1880) when it stated: "It is not necessary to decide here that there may not be things done…of an extraordinary character, for which the members who take part in the act may be held legally responsible." 103 U.S. at 204.  *Compare McGrain v. Daugherty,* 273 U.S. 135, 178 (1927) (complaint congressional subpoenas that compelled disclosure of private information in connection with an investigation proper so long as it is "in aid of legislation."). Another example of inconsistency in applying the Clause as a bar to claims is the decision in *United States v. Brewster,* 408 U.S. 501 (1972) holding that a prosecution of a Member of Congress for bribery is not barred by the Clause.  The Court issued that decision after the Court had previously decided in *United States v. Johnson,* 383 U.S. 169 (1966) holding that the Clause did bar prosecution of a Member for conflict of interest and conspiracy to defraud the United States.

Just four years after *Eastland* was decided in 1975, the Supreme Court declined to follow its pronouncement that the Clause imposed an "absolute bar" to challenges that a Member of Congress violated a provision of the Bill of Rights. *Davis v. Passman,* 442 U.S. 228, 246 (1979). Justice Rehnquist in dissent argued that the Clause, as construed in *Eastland*, shielded Members of Congress from such claims. *Id.*, at 251. A majority of the Justices disagreed. In the same term

---

[1] *Eastland* acknowledged that congressional power to investigate is limited. 421 U.S. at 504 n. 15. As explained in later discussion herein, the Clause does not bar claims that a legislative act is unauthorized or in excess of authority. The concurring Justices in *Eastland* stated that they "did not read the Court to suggest, nor do [we] agree, that the constitutionality of a congressional subpoena is always shielded from more searching scrutiny." *Id.*, at 515.

in which *Davis* was decided, the Court said in another opinion: "In no case has this Court ever treated the Clause as protecting ***all conduct relating to the legislative process***." *Hutchinson v. Proxmire,* 443 U.S. 111, 131 (1979) (holding that the Clause did not shield a Senator from a defamation claim based on statements in press releases) (emphasis added). Further  in *Powell v. McCormack,* 396 U.S. 486 (1969), the Court stated:

> Legislative immunity does not, of course, bar all judicial review of legislative acts. That issue was settled by implication as early as 1803, see Marbury v. Madison, 1 Cranch. (5 U.S.) 137, and expressly in Kilbourn v. Thompson, the first of this Court's cases interpreting the reach of the Speech or Debate Clause.

*Id.,* at 563.

Similar language appears in *Doe v. McMillan,* 412 U.S. 306, 311-12 (1973) ("[A] Member's conduct at legislative committee hearings, although subject to judicial review in various circumstances, as is legislation itself, may not be made the basis for a civil or criminal judgment against a Member because that conduct is within the 'sphere of legitimate legislative activity.") and *Gravel v. United States,* 408 U.S. 606, 621 (1972) ("[N]o prior case has held that Members of Congress would be immune if they executed an invalid resolution by themselves carrying out an illegal arrest, or if, in order to secure information for a hearing, themselves seized the property or invaded the privacy of a citizen."). Simply put, Defendants' argument that the Clause is always an "absolute bar to interference" by a court does not hold water.

**2.   The Court of Appeals has declined to follow *Eastland*.**

Defendants are also mistaken that the Court of Appeals has consistently applied the "absolute bar" test of *Eastland.* Opp. Mem. at 8. It did not do so in *McSurely v. McClellan,* 553 F. 2d 1277 (D.C. Cir. 1976) (*en banc*), a case decided a year after *Eastland* that involved a claimed violation of the Fourth Amendment. In *McSurley,* the Court of Appeals noted that the Supreme Court:

has taken 'a decidedly jaundiced view towards extending the Clause so
as to privilege ***illegal or unconstitutional conduct*** beyond that essential to foreclose
executive control of legislative speech or debate and associated matters such as voting
and committee reports and proceedings.'"

*Id.*, at 1287 (emphasis added). The opinion continued: "The employment of unlawful means to

implement an otherwise proper legislative objective is simply not 'essential to legislating.'" *Id.*,

at 1288. Actions asserting a violation of a provision of the Bill of Rights "are not entirely

foreclosed by legislative immunity." *Id.*, at 1284.

**3.  The implications of Defendants' position would make legislators all-powerful.**

The implication of Defendants' argument that all legislative acts are shielded from

judicial review is untenable. It would mean that Congress, its committees, and its Members can

violate the protections guaranteed by the Bill of Rights without recourse, can negate the attorney-

client privilege, and can take actions without authority and escape accountability. Defendants'

insistence that courts lack jurisdiction to interfere with congressional investigations is at odds

with *Trump v. Mazars USA, LLP,* 140 S.Ct. 2019 (2020), in which the Court repeated the well-

established limitations recognized by the judiciary on the exercise of investigatory power by

congressional committees. *Id.*, at 2032.

**4.  Defendants' construction would shield the enactment
     of laws and erode the separation-of-powers doctrine.**

In *McGrain,* the Court said:

> The contention is earnestly made on behalf of the witness that this power of
> inquiry [by a congressional committee], if sustained, may be abusively and oppressively
> exerted. If this be so, it affords no ground for denying the power. ***The same contention
> might be directed against the power to legislate***, and of course would be unavailing.

273 U.S. at 175 (emphasis added). Defendants declined to address Plaintiff's argument that the

proposition that all acts performed within the legislative sphere are immunized under the Clause

necessarily means that courts are barred from reviewing and invalidating the enactment of

statutes that violate the Constitution. Such a rule would upset the longstanding tradition that the Judiciary may strike down congressional enactments, which would severely erode the separation-of-powers doctrine. *McCulloch v. Maryland,* 17 U.S. 316, 423 (1819); *Bailey v. Drexel Furniture Co.* (*Child Labor Tax Case*)*,* 259 U.S. 20, 27 (1922).

### 5.  The Clause does not immunize all legislative acts from challenge.

To avoid the result that the Clause immunizes the enactment of laws as well as acts of congressional committees, the scope of the Clause's shield must be confined to the acts of individual Members, as originally intended. The leading proponent for inclusion of the Clause in the Constitution, James Wilson, offered this reason:

> In order to enable and encourage a representative of the public to discharge his public trust with firmness and success, it is indispensably necessary, that he should enjoy the fullest liberty of speech, and that he should be protected from the resentment of every one, however powerful, to whom the exercise of that liberty may occasion offense.

THE WORKS OF JAMES WILSON Vol. 1, at 421 (R. McCloskey ed. 1967) (quoted in *Powell v. McCormack,* 395 U.S. 486, 503 (1969). The Clause was approved at the Constitutional Convention in 1787 without discussion or opposition. *See United States v. Johnson,* 383 U.S. 169, 171 (1966) (citing ELLIOT'S DEBATES, Vol. V, at 406 (1836 ed.); RECORDS OF THE FEDERAL CONVENTION, Vol/II, at 246 (Farrand ed. 1911)). There is nothing in the history of its adoption that would suggest that it was intended to immunize *legislative acts* as opposed to the speech and debate of Members.

The Supreme Court, however, has ignored the intent of the Framers and the text of the Clause in a number of decisions that greatly expanded the scope of the privilege. In the first case in which the Supreme Court construed the Clause, it held that the immunity provided by the Clause was not limited to speech but extended to "anything 'generally done in a session of the House by one of its members in relation to the business before it." *Kilbourn,* 103 U.S. at 180.

The scope of the immunity has been extended to cover staff of Members of Congress, *Gravel,*
408 U.S. at 616-17, and voting by Members. *Powell,* 395 U.S. at 562. The opinion of the Court
in *Gravel* describes the expansion of the scope of immunity under the Speech or Debate Clause
from a personal privilege of individual Members to a shield for all acts, including those of
legislative staff, within the "legitimate legislative sphere." 408 U.S. at 617-22. This judicial
expansion of the Speech or Debate Clause exceeds the scope contemplated in text of the
Constitution.

### 6. The Clause does not immunize activity that is unauthorized.

*Kilbourn* struck down a resolution of the House of Representatives on the ground that it
was approved without lawful authority. *Id.* at 196. The Clause does not provide a shield for
actions by legislators that lack proper authorization or exceed the authority granted. Because the
claims in Counts III, IV, V, and VI in the Amended Complaint assert that Defendants are acting
without proper authority, the Clause does not bar those claims. In *United States v. Rumely,* 345
U.S. 41 (1953), the Court affirmed the judgment of the Court of Appeals that a congressional
committee lacked authority to compel the disclosure of certain information under the terms of the
resolution authorizing the committee's investigation. *Id.*, at 47-48. *See United States v. Reinecke,*
524 F.2d 435, 439-40 (D.C. Cir. 1975) (perjury conviction overturned where congressional
committee violated committee rule); *Liveright v. United States,* 347 F.2d 473, 476 (D.C. Cir.
1965) (subpoena invalid as unauthorized by resolution); *Shelton v. United States,* 327 F.2d 601,
606 (D.C. Cir. 1963) (subpoena invalidated as unauthorized by resolution).

### 7. The Clause does not immunize violations of the Bill of Rights.

Plaintiff has argued that the timing of the ratification of the Clause as a part of the 1788
Constitution and the 1791 ratification of the Bill of Rights defeats the argument that the Clause

shields legislative acts from challenges that they violate a provision of the Bill of Rights. The

subsequent ratification of the Bill of Rights demonstrates an intention to override the Speech or

Debate Clause with respect to alleged violations of the Bill of Rights. *See Tenn. Wine & Spirits*

*Retailers Ass'n v. Thomas,* 139 S. Ct. 2449, 2462 (2019) (Later adopted provision takes

precedence over earlier provision that is in conflict.); 1A N. SINGER & J. SINGER,

SUTHERLAND ON STATUTORY CONSTRUCTION § 23:9 (7ᵗʰ ed. 2009).

> In presenting the Bill of Rights to Congress, James Madison stated:

> If [these rights] are incorporated into the Constitution, independent tribunals of justice
> will consider themselves in a peculiar manner the guardians of those rights; they will be
> an impenetrable bulwark against every assumption of power in the Legislature or
> Executive; they will be naturally led to resist every encroachment upon rights expressly
> stipulated for in the Constitution by the declaration of rights.

I ANNALS OF CONGRESS 439 (1791) (quoted in *Davis v. Passman,* 442 U.S. 228, 241-42

(1979). This statement is an unmistakable sign that the guarantees of the Bill of Rights were not

limited in any way by provisions in the Constitution ratified in 1788, including the Speech or

Debate Clause.[2]

**B.  Count I – Violation of the Fourth Amendment**

**1.  Count I is a hybrid claim involving a combination of
     Fourth Amendment and First Amendment interests.**

Count I is a hybrid claim that is brought to protect the interests guaranteed by both the

Fourth Amendment and the First Amendment. *See* Amended Complaint ¶ 75, asserting:

> The conjunction of Plaintiff's First Amendment rights and Fourth
> Amendment rights present a hybrid situation in which those rights
> reinforce each other, making the subpoena's intrusive demand

---

[2] In *Watkins v. United States,* 354 U.S. 178 (1957), the court stated: "Clearly, an investigation is
subject to the command that Congress shall make no law abridging the freedom of speech or
press or assembly." *Id.,* at 197. Any such investigation is "beyond the powers conferred on
Congress in the Constitution." *Id.,* at 198.

qualitatively more offensive to the fundamental law that binds the
House and its committees.

Courts  have uniformly agreed with this proposition. *See, e.g., Lo-Ji Sales v. New York,*
442 U.S. 319, 329 (1979); *Stanford v. Texas*, 379 U.S 476, 484-85 (1965); *Marcus v. Search
Warrant of Property,* 367 U.S. 717, 724-29 (1961).

**2.   The Subpoena is overbroad and not narrowly tailored.**

The breadth of the Subpoena is extraordinary. Its Schedule compels the production of 29
categories of documents and communications covering a period from September 1, 2020, to the
present. *See* Ex. 2 to the Amended Complaint. One example from the categories listed is
illustrative:

16. All documents reflecting communications with you refuting, or challenging any claim
of election fraud made by you or other representatives of the Trump campaign with
respect to the 2020 election.

This forced disclosure for a period of almost two years of communications with many
individuals who wish to maintain the privacy of their communications constitutes a significant
intrusion into a space protected from such intrusion by the combination of the First and Fourth
Amendments. Am. Compl. at ¶¶ 15-17, 67-71, 75-78.

Defendants' reliance on *McPhaul v. United States,* 364 U.S. 382 (1960) in its argument
that the Subpoena in not overly broad because it is "within the scope of the Congressional
inquiry at issue" is unavailing. Opp. Mem. at 25. First, the legitimacy of an investigation does
not necessarily assure the legitimacy of a particular subpoena. *See Trump v. Deutsche Bank AG,*
943 F.3d 627, 664-66, 675-78 (2019). Second, the compelled disclosure of private information in
circumstances such as presented in this case must be narrowly tailored. *See Americans for
Prosperity Found. v. Bonta,* 141 S. Ct. 2373, 2384 (2021). The expansive scope of the Subpoena
imposes a substantial and unjustified burden on Plaintiff. It seeks to obtain sensitive and

confidential information, including information from political opponents of the Members of the

Select Committee, about tactics and strategies of those working in concert to confirm and expose

evidence of election fraud and irregularities in the 2020 and other elections. The Select

Committee has already concluded that those allegations are supposedly meritless without a

thorough investigation of the allegations of election fraud and other irregularities in the 2020

Presidential election. Given Defendants' demonstrated bias, the true purpose of the Subpoena is

not to aid the Select Committee in the investigation of the allegations but rather to harass its

political opponents and frustrate their ongoing efforts to determine and expose the extent of

election fraud and irregularities in recent elections. Am. Compl. at ¶ 15.

**3.  The Subpoena is governed by the warrant provision.**

The Fourth Amendment contains no exemption for congressional committees. Its

requirements apply to all governmental actors. *Watkins*, 354 U.S. at 188. The Supreme Court has

not articulated the standard imposed on congressional committees when they compel testimony

or the production of documents. *Mazars,* 140 S. Ct. at 2031-32. There is no principled

justification, however, for a different standard for congressional committees than for other

governmental actors.

Defendants argue that the Subpoena is not a warrant because "no search has been

authorized or conducted." Opp. Mem. at 24-25. Plaintiff need not wait until a search has been

conducted to challenge whether it is a violation of the Fourth Amendment. Similarly, the nature

of the document does not depend on whether the search has already been conducted. House

Resolution 503 provides:

> Section 5(a)(4) The chair of the select Committee may authorize and
> issue subpoenas…including for the purpose of taking depositions.
> (5) The chair of the Select Committee is authorized to compel by
> subpoena the furnishing of information by interrogatory.

14

(6)(A) The chair of the Select Committee, upon consultation with the ranking member, may order the taking of depositions, including pursuant to subpoena….

The authorizing language is unambiguous. A congressional committee subpoena can be issued and enforced outside of the judicial process and without the approval of a judge or magistrate. *Anderson v. Dunn,* 19 U.S. (6 Wheat.) 204, 230-31 (1821); *see Mancusi v. DeForte,* 392 U.S. 364, 370-71 (1968) (subpoena not a valid warrant because not issued by a neutral and detached magistrate); *Barry v. United States ex rel. Cunningham,* 279 U.S. 597. 613-14 (1929); *Marshall v. Gordon,* 243 U.S. 521, 538 (1917).

The Supreme Court has stated:

The Fourth Amendment proscribes all unreasonable searches and seizures, and it is a cardinal principle that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.

*Mincey v. Arizona,* 437 U.S. 385, 390 (1978).

The Subpoena violates Plaintiff's rights under the Fourth Amendment.

## C.  Count II – Violation of the First Amendment

### 1.  The Subpoena has a chilling effect.

The Subpoena violates Plaintiff's rights to free speech, free association, and the right to petition the government for the redress of grievances. The Amended Complaint sets out numerous facts to demonstrate the efforts "to stifle free speech and intimidate anyone who speaks out on election fraud." *See e.g.,* Am. Compl. at ¶¶ 12, 13, 15, 16. The U.S. Department of Homeland Security published "guidance" on "domestic terrorism" that specifically targets those who express "narratives of fraud in the recent general election." *Id*. at ¶ 12. The Director of National Intelligence also publicly announced in 2021 that "narratives of fraud in the recent

general election" contributed to "domestic violent extremism." *Id.* at ¶ 13. The issuance of the Subpoena under the circumstances has the unavoidable purpose and effect of intimidating Plaintiff, his associates, and those who might wish to speak to Plaintiff. *Id.* at ¶¶ 15, 16, 17.

### 2.   Count II satisfies the *Iqbal/Twombly* test.

Defendants argue that "Mr. Olsen's conclusory assertion that disclosure of the identities of his associates would 'chill and potentially end their willingness to continue their association with [Mr. Olsen],' Am. Compl. ¶ 77, is far too amorphous to be actionable." Opp. Mem. at 23 (quoting *Senate Permanent Subcomm. v. Ferrer,* 199 F. Supp. 3d 125, 143 (D.D.C. 2016).) Defendants insist that Mr. Olsen has "failed to explain the nature and scope of the subpoena's alleged intrusion into his First Amendment rights."  That argument ignores the detailed description in the Amended Complaint of the chilling effect of the recent statements and actions of the Biden Administration that threaten American citizens who express concerns about the legitimacy of the 2020 presidential election with investigation and possible prosecution as domestic terrorists. Am. Compl. ¶¶ 12, 13. Those allegations establish far more that a "subjective chill." *Laird v. Tatum,* 408 U.S. 1, 13-14 (1972).

In *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), the court stated: "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.,* at 678 (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). Count II establishes facial plausibility if the Court can draw a reasonable inference that Defendants are liable for violating Plaintiff's First Amendment rights. 556 U.S. at 678. Such an inference is proper if there is "more than a sheer possibility" that Defendants are liable. *Id.* The Court must draw on its "judicial experience and common sense" in determining whether, in the circumstances, there is more than a mere possibility of misconduct. *Id.*

### 3.  The mere issuance of the Subpoena is chilling.

As *Watkins* made clear, "the mere summoning of a witness and compelling his to testify, against his will, about his beliefs, expressions or associations is a measure of government interference." 354 U.S. at 197-98; *see In re Grand Jury Proceeding,* 842 F.2d 1229, 1236 (11th Cir. 1988) ("government investigation itself may indicate the possibility of harassment"); *Pollard v. Roberts,* 283 F.Supp. 248, 258 (D. Ark. 1968), *aff'd per curiam* 393 U.S. 14 (1968) (concluding that prosecutor's attempt to subpoena contributors' names unconstitutional despite "no evidence of record in this case that any individuals have as yet been subjected to reprisals on account of the contributions in question" because "it would be naïve not to recognize that the disclosure of the identities of to campaign funds would subject at least some of them to potential economic or political reprisals….).

 Not only at the pleading stage, but also throughout the proceedings, Plaintiff is not required to disclose the identity of his associates and the particular circumstances that prompt them to insist on anonymity as he seeks to prevent Defendants from invading their freedom of association by asserting his claim. It would defeat the purpose of the First Amendment to require Plaintiff to disclose that information as the price of advancing his claim. He would be surrendering the very information that the freedom of association protects from the prying eyes of the government. The Amended Complaint provides more than enough factual detail to give rise to a reasonable inference that Defendants have invaded his rights guaranteed by the First and Fourth Amendments.

The Court of Appeals in *Community-Service Broadcasting of Mid-America, Inc. v. FCC,* 593 F.2d 1102 (D.C. Cir. 1978) (*en banc*) stated:

> Chilling effect is, by its very nature, difficult to establish in concrete and quantitative terms; the absence of any direct actions against individuals assertedly subject to a chill can be viewed as much as proof of the success of the chill as of evidence of any need for concern…. The absence of such concrete evidence, however, does not mandate dismissal of the claim out of hand; rather, it is the task of the court to evaluate the likelihood of any chilling effect…
> .

*Id.*, at 1118. None of the decisions cited by Defendants support their argument that Plaintiff's allegations are too amorphous to survive a motion to dismiss. Opp. Mem. at 23 & n. 10. Indeed, the extensive discussion in *Buckley v. Valeo,* 424 U.S. 1 (1976) ultimately holding that limitations on campaign expenditures violated the First Amendment because they placed unconstitutional restrictions on the ability of citizens and associations to engage in political expression—similar to the chilling effect here—favors Plaintiff's position, not Defendants'.

Defendants' reliance on *Doe No. 1 v. Reed,* 561 U.S. 186 (2010) is also misplaced.  First, that case involved the disclosure of names and addresses of those signing a public referendum— not a decision on the merits of a free association claim involving *private communications* as here.  Second, the Supreme Court took expressly noted that disclosure of the individual identities was not absolute.  Specifically, the Supreme Court held that plaintiffs' challenge was too "broad" by arguing that "disclosure in general violate[d] the First Amendment rights of those who sign referendum petitions", which often involves innocuous issues such as "'tax policy, revenue, budget, or other state law issues.'"  *Id*. at 200-01. However, the Supreme Court stated that a narrower challenge might succeed. *Id*. at 201 (stating "[f]aced with the State's unrebutted arguments that only modest burdens attend the disclosure of a typical petition, we must reject plaintiffs' broad challenge to the PRA. In doing so, we note--as we have in other election law

disclosure cases--that upholding the law against a broad-based challenge does not foreclose a litigant's success in a narrower one.").[3]

The Select Committee's interest in obtaining the information from Plaintiff through the Subpoena before the issues raised by the Amended Complaint are resolved by the Court is outweighed by Movant's interest in protecting his rights guaranteed by the Constitution. *See Louisiana v. Becerra,* 2022 WL 16571, * 15 (W.D. LA. Jan.1, 2022). The chilling effect on Movant's exercise of his First Amendment rights, namely, the freedom of speech and political expression, the freedom of association, the freedom of the press, and the right to petition the government for the redress of grievances, would be immediate and severe. *See Bonta,* 141 S. Ct. at 2382-83 ("Broad and sweeping inquiries into these protected areas discourage citizens from exercising rights protected by the Constitution."). These likely consequences are described in Mr. Olsen's declaration attached as Ex. A to Plaintiff's Memorandum in Support of Motion for Preliminary Injunction at ¶¶ 7-12, 18-20. Enforcement of the Subpoena would inhibit Plaintiff and his associates in continuing to bring to the public's attention the extent of election fraud in the 2020 Presidential election. *See Nat'l Treasury Emps. Union v. United States,* 101 F.3d 1423, 1430 (D.C. Cir. 1996).

4. **The Amended Complaint may not be dismissed at this stage based on fact-dependent balancing factors.**

The Supreme Court has adopted a balancing test to determine the validity of a claim of a violation of protected association based on the compelled disclosure by government of

---

[3] *Sen. Permanent Subcomm. v. Ferrer,* 199 F. Supp. 3d 125 (D.D.C. 2016), *aff'd*, 856 F.3d 1080 (D.C.Cir. 2017) is factually distinguishable from Plaintiff's pleading in that Ferrer pled no facts to describe a chilling effect and merely asserted that the challenged action "can" produce a chill. 199 F. Supp.3d at 13. The decision in *Brock v. Local 375, Plumbers Int'l Union of Am., AFL-CIO,* 860 F.2d 346 (9th Cir. 1988) did not rule on the sufficiency of the complaint in that case.

information about an affiliation with a group engaged in advocacy. *Bonta,* 141 S. Ct. at 2382.[4] It applies an exacting standard, under which the defendant must show "a substantial relation between the disclosure requirement and a sufficiently important governmental interest." *Id.,* at 2383. The disclosure requirement must be "narrowly tailored to the interest it promotes" so that it does not "broadly stifle fundamental personal liberties when the end can be more narrowly achieved." *Id.,* at 2384. Narrow tailoring is required even where the government has shown a "legitimate and substantial governmental interest" for the requirement. *Id.*

     The majority in *Bonta* rejected the dissent's argument that a plaintiff must demonstrate a severe burden on his association rights to establish the need for narrow tailoring stating:

> Contrary to the dissent, we understand this Court's discussion of rules that are "broad" and "broadly stifle" First Amendment freedoms to refer to the scope of challenged restrictions---their breadth---rather than the severity of the demonstrated burden.

*Id.,* at 2384-85. As in all First Amendment cases, the government may regulate "only with narrow specificity." *Id.* "Narrow tailoring is crucial where First Amendment activity is chilled---even if indirectly---'[b]ecause First Amendment freedoms need breathing space to survive.'" *Id.* (quoting *NAACP v. Button,* 371 U.S. 415, 433 (1963)).

    **5.  The Subpoena violates freedom of the press.**

     Enjoyment of freedom of the press is not restricted to corporate newspapers and broadcast companies. *First Nat'l Bank of Boston,* 435 U.S. 765. 782-83 & n. 18 (1978). It is a guarantee extended to every citizen engaged in publicly discussing all matters of concern to the public. *Id.*, at 776. Plaintiff has alleged that there is credible evidence of election fraud and irregularities that altered the outcome of the 2020 presidential election. *See* Am. Compl. at ¶¶

---

[4] Mr. Olsen objects to any balancing of a First Amendment right that the text of that provision guarantees in absolute language. He contends, however, that his free association claim satisfies the exacting scrutiny standard in any event.

40-55. He seeks to proceed to trial on the issue of whether election fraud and irregularities affected the outcome of that election. *See* Prayer for Relief Item f. House Resolution 503 was approved with the conclusion that "false narratives" fueled the attack on the Capitol. The Select Committee has not conducted a serious investigation of whether election fraud and irregularities played a role in the 2020 election. *See, e.g.,* Am. Compl. at ¶¶ 97, 99.

Defendants now claim an interest in the information that Mr. Olsen and his associates have assembled, although House Resolution 503 has prejudged the question and the Select Committee has not conducted an investigation of the publicly available evidence of election fraud and irregularities. The Subpoena violates Plaintiff's First Amendment right to freedom of the press which entitles him to control his message and the timing, manner, and circumstances of the disclosure of the evidence that he and his associates have assembled concerning election fraud and irregularities occurring during the 2020 Presidential election. *See, e.g.,* Am. Compl. at ¶ 15. The Subpoena demands that Plaintiff deliver documents protected by the attorney-client privilege and work product doctrine on that subject to Defendants who have demonstrated a pronounced bias, selectively leaked private information, suppressed evidence that conflicts with their predetermined message, and prevented procedural safeguards from being implemented in their proceedings to assure fairness. The compelled disclosure of private and privileged communications as well as other information in Plaintiff's possession will enable Defendants to control and distort the message that Plaintiff wishes to deliver in a manner and at a time of his choosing.

**D.  Count III – Violation of Separation-of-Powers provisions**

A subpoena may not be issued to "inquire into matters which are the exclusive province of the other branches of the Government." *Barenblatt v. United States,* 360 U.S. 109, 112 (1959).

"Congress may not issue a subpoena for the purpose of 'law enforcement,' because 'those powers are assigned under the Constitution to the Executive and the Judiciary." *Mazars,* 140 S. Ct. at 2032 (quoting *Quinn v. United States,* 349 U.S. 155, 161 (1955)).

The focus in this proceeding is on the Subpoena issued to Plaintiff, not other aspects of the Select Committee investigation except to the extent those aspects shed light on the purpose for the issuance of the Subpoena. Even if the investigation has other legitimate purposes, the Subpoena is invalid if the purpose of issuing it is to develop a criminal case against former President Trump. *See Mazars,* 140 S. Ct. at 2032; *Deutsche Bank,* 943 F.3d at 664-65. *See also* Am. Compl. at ¶ 8.

The Subpoena could not aid the Select Committee in developing legislation because the information that it seeks is limited to (1) Mr. Olsen's communications with Mr. Trump and his discussions with officials of the Department of Justice on Mr. Trump's behalf concerning a challenge on behalf of the United States against several States for violating the Electors Clause of the Constitution, and (2) private and privileged communications and other information concerning election fraud in the 2020 Presidential election assembled by Mr. Olsen and his associates, as well as their strategies and tactics to bring that evidence to the attention of the public, elected officials, and appropriate courts. Any legislative proposals that the Select Committee could develop based on that information would be confined to the need for the preservation of election integrity, which the Select Committee in any event had chosen not to consider when it concluded from the outset (as House Resolution 503 had done) that claims of election fraud in the 2020 Presidential election were baseless. There was no legitimate purpose served by issuing the Subpoena under these circumstances; the Subpoena was issued to assist the

Select Committee in developing a criminal referral of the case against Mr. Trump to the Department of Justice.

The allegations in the Amended Complaint (¶¶ 8, 80-91) that Defendants have been pursuing the investigation to build a case against Mr. Trump for criminal referral to the Department of Justice are confirmed by the words and actions of Defendants themselves. *Id*. at ¶¶ 83-86. There is a significance difference between conducting an investigation during which evidence of criminal conduct is incidentally obtained, *see Deutsche Bank,* 943 F.3d at 665 ("might possibly disclose crime"); *McGrain v. Daugherty,* 273 U.S. 135, 179-80 (1927) (same), and undertaking an investigation from the outset for the avowed purpose of developing a case for criminal referral. The Subpoena having been issued for that latter purpose is, therefore, invalid and unenforceable.

**E.  Count IV – Violation of House Resolution 503 – prejudgment of election fraud issue**

Count IV also asserts that the Subpoena is unenforceable because, *inter alia*, it is predicated on the predetermination by the House and the Select Committee that all claims of election fraud are themselves fraudulent. Such a predetermination serves no legitimate legislative purpose because, as a result, the Subpoena seeks information concerning a matter that the Select Committee has already resolved. Plaintiff's documents cannot contribute to an investigation that the Select Committee had already decided not to undertake. Those documents would only be used if and to the extent they could be used to support Defendants' partisan narrative.  The Subpoena, therefore, is invalid and unenforceable. Amended Complaint ¶¶ 97-104.

Defendants' accusation that Plaintiff "continues to peddle debunked claims of election fraud," Opp. Mem. at 1, causes serious injury to Plaintiff's reputation and constitutes a violation of his constitutional rights, including his right to free speech. It is effectively a charge, based on

the language of House Resolution 503, and pronouncements by the Department of Homeland Security and the Office of the Director of National Security that Plaintiff and his associates are domestic terrorists. *See* Am. Compl. at ¶¶ 12-13.  It does not absolve Defendants of responsibility for such a reckless accusation that it is made in the context of litigation. "[W]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, the due process requirements of notice and opportunity to be heard are essential." *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971); *see also Codd v. Velger,* 429 U.S. 624, 627 (1977). Plaintiff has not been given a fair opportunity to answer the accusation. Because of its demonstrated bias and refusal to follow essential procedural safeguards in conducting hearings, the Select Committee cannot assure Plaintiff a fair hearing that would allow him to repute the accusation. The Amended Complaint requests, among other things, that the Court conduct the appropriate proceedings to resolve simply whether there is evidence of election fraud and irregularities in the 2020 Presidential election, thereby giving Plaintiff an opportunity to refute Defendants' accusation. *See* Prayer for Relief Item f.

## F.  Count V – Violation of House Rules

In light of Defendants' representation that House Rule X applies to standing committees only, Plaintiff withdraws and abandons this claim.

## G.  Count VI – Unauthorized exposure for its own sake

The Amended Complaint also asserts in Count VI that the Subpoena seeks private information that the Select Committee will use merely for the sake of exposing that information. *See*, *e.g.*, Am. Compl. at ¶¶ 116, 118. The Select Committee has repeatedly leaked private communications that it has secured through numerous subpoenas for the purpose of exposing the information to the public to aggrandize the Select Committee and to punish the individuals

involved in those communications.[5] It has suppressed information that conflicts with its partisan narrative. Compelling disclosure under these circumstances is an improper purpose that warrants quashing the Subpoena. *Mazars,* 140 S. Ct. at 2032.

As noted above, the information sought by the Subpoena relates entirely to an issue that the House of Representatives and the Select Committee have already pre-judged and decided. The only purpose of the Subpoena is to burden and intimidate Plaintiff.

## H.   Count VII – Violation of Attorney-Client Privilege and Work Product Doctrine

"[R]ecipients of legislative subpoenas] retain common law and constitutional privileges with respect to certain materials, such as attorney-client communications…." *Mazars*, 140 S.Ct. at 2032. The Amended Complaint  and Mr. Olsen's declaration attached as Ex. A to Plaintiff's Memorandum in Support of Motion for Preliminary Injunction establish the basis for both the assertion of the attorney-client privilege and invocation of the work product doctrine. *See* Am. Compl. at ¶¶ 2, 69-70. Mr. Olsen has committed to providing a privilege log and to submitting pertinent document for *in camera* review by the Court, if required. Plt's Mem. in Support of Motion for Preliminary Injunction at 20. This Court has noted the concession of counsel in another proceeding that there is no statute or case law that requires production of a privilege log. *Comm. on Judiciary v. Miers,* 558 F.Supp.2d 53, 107 (D.D.C. 2008). If the Court ultimately rules that the Subpoena is unenforceable, Plaintiff would have been needlessly burdened by having to produce a privilege log.

---

[5] https://www.axios.com/2022/04/27/jan-6-leaks-undermine-committees-made-for-tv-plans; https://nbcnews.com/politics/congress/avalanche-leaks-risks-jan-6-committee-delivering-blockbuster-hearings; https://www.columbian.com/news/2022/apr/30/mark-meadows-says-jan-6-committee-leaked-all-his texts;https://www.thegateaypundit.com/2022/04/january-6-committee-leaks-san-hannity-text-messages-cnn;https://www.tampabay.com/news/nation-world/2022/04/30/mark-meadows-says-jan-6-panel-is-leaking-his-texts-to-vilify-him/

## <u>CONCLUSION</u>

The Court should deny Defendant's Motion to Dismiss.


KURT B. OLSEN



By_____/s/_____
Christopher I. Kachouroff, Esq.

Patrick M. McSweeney*                              Charles Burnham, Esq.
Christopher I. Kachouroff*                          DC Bar # 1003464
**MCSWEENEY, CYNKAR & KACHOUROFF, PLLC**   **BURNHAM & GOROKHOV, PLLC**
13649 Office Place, suite 101                      1424 K St. NW Suite 500
Woodbridge, VA 22192                              Washington, D.C. 20005
Telephone: (804) 937-0895                          202.386.6920
patrick@mck-lawyers.com                            202.390.7587 F
chris@mck-lawyers.com                              charles@burnhamgorokhov.com

* *Admitted pro hac vice*                          *Counsel for Plaintiff*