## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KURT B. OLSEN, | |
| *Plaintiff*, | |
| v. | Case No. 1:22-CV-00807-CJN |
| NANCY PELOSI et al., | |
| *Defendants*. | |

## REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

DOUGLAS N. LETTER
  *General Counsel*
TODD B. TATELMAN
  *Principal Deputy General Counsel*
ERIC R. COLUMBUS
  *Special Litigation Counsel*
MICHELLE S. KALLEN
  *Special Litigation Counsel*

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House Office Building
Washington, D.C. 20515
Telephone: (202) 225-9700
Douglas.Letter@mail.house.gov

August 1, 2022

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................... ii

INTRODUCTION ................................................................................................... 1

ARGUMENT ......................................................................................................... 1

I.      The Speech or Debate Clause Bars Mr. Olsen's Suit And Requested Relief ..................... 1

II.     The Amended Complaint Fails To State A Claim ............................................... 6

        A.      The Subpoena Serves A Valid Legislative Purpose And Does Not Violate The
                Separation Of Powers ............................................................. 6

        B.      The Select Committee's Investigation Is Consistent
                With House Resolution 503 ........................................................ 8

        C.      The Select Committee Is Properly Composed ...................................... 8

        D.      Mr. Olsen's Other Constitutional Claims Fail ................................... 8

                1.   Mr. Olsen Fails To State A Valid Fourth Amendment Claim ............... 9

                2.   Mr. Olsen Fails To State A Valid First Amendment Claim ............... 10

        E.      Mr. Olsen's Compliance With The Subpoena Will Not Violate Attorney-Client
                Privilege Nor Work Product Protections .......................................... 13

CONCLUSION ..................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*Ams. for Prosperity Found. v. Bonta,*
  141 S. Ct. 2373 (2021) ..................................................................................................9, 12

*Barenblatt v. United States,*
  360 U.S. 109 (1959) .............................................................................................................11

*Bean LLC v. John Doe Bank,*
  291 F. Supp. 3d 34 (D.D.C. 2018).....................................................................................12

*Buckley v. Valeo,*
  424 U.S. 1 (1976) .................................................................................................................11

*Budowich v. Pelosi,*
  No. 21-3366 (D.D.C. June 23, 2022) ..................................................................................5

*Comm. on Judiciary v. Miers,*
  558 F. Supp. 2d 53 (D.D.C. 2008).................................................................................13, 14

*Consumers Union of U.S., Inc. v. Periodical Correspondents' Ass'n,*
  515 F.2d 1341 (D.C. Cir. 1975)............................................................................................5

*Davis v. Passman,*
  442 U.S. 228 (1979) ..............................................................................................................2

*Doe v. McMillan,*
  412 U.S. 306 (1973) ..............................................................................................................5

*\*Eastland v. U.S. Servicemen's Fund,*
  421 U.S. 491 (1975) ...............................................................................................1, 2, 4, 5, 6, 7

*Gravel v. United States,*
  408 U.S. 606 (1972) ..............................................................................................................2

*Hutchinson v. Proxmire,*
  443 U.S. 111 (1979) ..............................................................................................................4

*Jud. Watch, Inc. v. Schiff,*
  998 F.3d 989 (D.C. Cir. 2021)..............................................................................................4

*Kilbourn v. Thompson,*
  103 U.S. 168 (1880) ..............................................................................................................2

*Liveright v. United States,*
  347 F.2d 473 (D.C. Cir. 1965)...............................................................................................3

*McCarthy v. Pelosi*,
   5 F.4th 34 (D.C. Cir. 2021)...............................................................................2

*McPhaul v. United States*,
   364 U.S. 372 (1960) ......................................................................................9, 12

*McSurely v. McClellan*,
   553 F.2d 1277 (D.C. Cir. 1976).......................................................................3

*Powell v. McCormack*,
   395 U.S. 486 (1969) .........................................................................................2

*Rangel v. Boehner*,
   785 F.3d 19 (D.C. Cir. 2015)...........................................................................5

*Republican Nat'l Comm. v. Pelosi*,
   2022 WL 1294509 (D.D.C. May 1, 2022)......................................................6, 9

*Senate Permanent Subcomm. on Investigation v. Ferrer*,
   No. 16-mc-621 (D.D.C. Sept. 16, 2016)........................................................13

*Senate Permanent Subcomm. v. Ferrer*,
   199 F. Supp. 3d 125 (D.D.C. 2016)...............................................................11

*Senate Select Comm. on Ethics v. Packwood*,
   845 F. Supp. 17 (D.D.C. 1994).......................................................................12

*Shelton v. United States*,
   327 F.2d 601 (D.C. Cir. 1963).........................................................................3

*Trump v. Deutsche Bank AG*,
   943 F.3d 627 (2d Cir. 2019) ............................................................................9

*Trump v. Thompson*,
   20 F.4th 10 (D.C. Cir. 2021)..........................................................1, 3, 4, 6, 7, 8, 12

*United States v. Brewster*,
   408 U.S. 501 (1972) .......................................................................................3, 4

*United States v. Johnson*,
   383 U.S. 169 (1966) .........................................................................................6

*United States v. Reinecke*,
   524 F.2d 435 (D.C. Cir. 1975).........................................................................3

*United States v. Rumely*,
   345 U.S. 41 (1953) ...........................................................................................3

*Watkins v. United States*,
  354 U.S. 178 (1957) ..................................................................................................7, 10, 11

**Legislative Sources**

H. Res. 503, 117th Cong. (2021) ..................................................................................................8

**Other Authorities**

Christopher M. Davis et al., Cong. Rsch. Serv., RL30240, Congressional Oversight Manual 61-62
  (Mar. 31, 2021) .................................................................................................................... 13

## INTRODUCTION

As we explained in our motion to dismiss, this lawsuit—and the relief Mr. Olsen seeks—is barred by the Speech or Debate Clause.  And even if this Court had jurisdiction to consider Mr. Olsen's claims, he fails to state any claim on which relief can be granted.  As several courts have now recognized (with no courts having disagreed), the Select Committee has a valid legislative purpose for its subpoenas, and its investigation is consistent with its authorizing resolution.  Further, as we have established, Mr. Olsen's First and Fourth Amendment claims fail as a matter of law.

In response, Mr. Olsen largely ignores the governing precedent and fails to engage meaningfully with our arguments.  Indeed, his opposition brief does not even cite—much less discuss—the D.C. Circuit's decision in *Trump v. Thompson*, 20 F.4th 10, 35 (D.C. Cir. 2021), *inj. denied*, 142 S. Ct. 680 (2022), *cert. denied*, 142 S. Ct. 1350 (2022).  Ultimately, Mr. Olsen's response makes clear that he simply disagrees with binding precedent.  That precedent establishes that his case suffers from multiple flaws—including a fatal jurisdictional defect—and Mr. Olsen has provided no valid reason that his suit should continue.  The Amended Complaint should be dismissed.

## ARGUMENT

I.      **The Speech Or Debate Clause Bars Mr. Olsen's Suit And Requested Relief**

Under a straightforward application of binding precedent, this Court lacks subject matter jurisdiction because the Speech or Debate Clause precludes Mr. Olsen's suit against the Speaker of the House, the Select Committee, and its Members.  *See* Defs.' Mem. in Opp'n to Prelim. Inj. & in Supp. of Mot. to Dismiss ("Mem.") 7-13, ECF No. 23.  Rather than address controlling case law, Mr. Olsen relies on cases that pre-date the Supreme Court's seminal decision in *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491 (1975); involved acts outside of the legislative sphere;

and did not address or involve Speech or Debate immunity at all.  None of those cases suggests that the Speech or Debate Clause is inapplicable here.  To the contrary, under the governing Supreme Court and D.C. Circuit case law, the Clause bars this suit and the relief it seeks.

1.  Mr. Olsen contends, contrary to *Eastland*, that the protections of the Speech or Debate Clause are not "absolute."  Pl.'s Opp'n to Defs.' Mot. to Dismiss ("Opp.") 3-5, 7, ECF No. 27.  That claim is incorrect.  Mr. Olsen relies on several cases decided before *Eastland* that the Supreme Court has since distinguished on the basis that they did not involve challenges to legislative acts.  *See Gravel v. United States*, 408 U.S. 606, 618-21 (1972) (distinguishing *Kilbourn v. Thompson*, 103 U.S. 168 (1880) and *Powell v. McCormack*, 395 U.S. 486 (1969)); *see also McCarthy v. Pelosi*, 5 F.4th 34, 41 (D.C. Cir. 2021) (noting that the *Gravel* Court "considered the persons whose conduct was at issue in those cases to have been uninvolved in the performance of legislative acts" (internal quotation marks omitted)), *cert. denied*, 142 S. Ct. 897 (2022).  But where, as here, a suit is brought against Members of Congress and a House committee acting within the legislative sphere, the law is plain: "the Speech or Debate Clause is an absolute bar to interference."  *Eastland*, 421 U.S. at 503.

2.  The primary post-*Eastland* Supreme Court case on which Mr. Olsen relies is *Davis v. Passman*, 442 U.S. 228, 246 (1979).  Opp. 7-8.  But Mr. Olsen badly mischaracterizes that decision.  Contrary to his contention, the *Davis* Court did not "decline[] to follow its pronouncement that the Clause imposed an 'absolute bar' to challenges that a Member of Congress violated a provision of the Bill of Rights."  Opp. 7.  Rather, the Supreme Court expressly noted that "[t]he Court of Appeals did not consider . . . whether respondent's conduct was shielded by the Speech or Debate Clause of the Constitution" and thus the Supreme Court "d[id] not reach this question."  *Davis*, 442 U.S. at 249; *see also id.* at 235 n.11.

Likewise, the other cases Mr. Olsen cites that did not involve any assertion of Speech or Debate immunity are plainly irrelevant.  *See* Opp. 11 (citing *United States v. Rumely*, 345 U.S. 41 (1953); *United States v. Reinecke*, 524 F.2d 435, 439-40 (D.C. Cir. 1975); *Liveright v. United States*, 347 F.2d 473, 476 (D.C. Cir. 1965); and *Shelton v. United States*, 327 F.2d 601, 606 (D.C. Cir. 1963)).

4.  Mr. Olsen also relies on the D.C. Circuit's decision in *McSurely v. McClellan*, 553 F.2d 1277 (D.C. Cir. 1976) (en banc).  Opp. 7, 8.  But, contrary to Mr. Olsen's characterization (Opp. 8), the D.C. Circuit did not—and of course could not—"decline[] to follow *Eastland*" in that case.  Rather, in *McSurely*, the D.C. Circuit held that Speech or Debate immunity did not apply to certain acts because they did not pertain to a subject "on which legislation could be had."  *See id.* at 1296 ("The fact that [the investigator] took and transported *concededly extraneous material*—and it is significant that he seized 'some personal letters'—takes this case outside the protection of legislative immunity." (emphasis added)).

Any suggestion that the subpoena at issue here does not pertain to a subject on which legislation could be had is plainly wrong.  The D.C. Circuit has already held that "the January 6th Committee plainly has a 'valid legislative purpose' and its inquiry 'concern[s] a subject on which legislation could be had.'" *Trump v. Thompson*, 20 F.4th at 41 (citation omitted).  And the subpoena issued to Mr. Olsen is important to the Select Committee's investigation:  Mr. Olsen promoted claims that the 2020 Presidential election was fraudulent and participated in attempts to disrupt or delay the constitutionally mandated electoral count on January 6th.  *See* Mem. 2-3.

5.  Nor can Mr. Olsen find any support in the Supreme Court cases involving challenged conduct that was *outside* the legitimate legislative sphere.  He cites (Opp. 7-8) *United States v. Brewster*, in which the Supreme Court held that the Clause did not bar the prosecution of the

former Senator defendant because "[a]n examination of the indictment . . . and the statutes on which it is founded reveals that no inquiry into legislative acts or motivation for legislative acts is necessary for the Government to make out a prima facie case."  408 U.S. 501, 525 (1972); *see also Hutchinson v. Proxmire*, 443 U.S. 111, 127 (1979) ("[I]t is clear that nothing in history or in the explicit language of the Clause suggests any intention to create an absolute privilege from liability or suit for defamatory statements made outside the Chamber.").  However, the *Brewster* Court made clear that "[i]t is beyond doubt that the Speech or Debate Clause protects against inquiry into acts that occur in the regular course of the legislative process and into the motivation for those acts."  *Brewster*, 408 U.S. at 525.

As explained in our opening brief, Supreme Court and D.C. Circuit precedent establish that the issuance of a subpoena is a legislative act protected by the Speech or Debate Clause. Mem. 8-10 (citing *Eastland*, 421 U.S. at 503-04; and *Jud. Watch, Inc. v. Schiff*, 998 F.3d 989, 993 (D.C. Cir. 2021)).  And the D.C. Circuit has already held that the Select Committee's investigation serves a legitimate legislative purpose.  *Trump v. Thompson*, 20 F.4th at 41.

6.  Likewise, Mr. Olsen's arguments that the Speech or Debate Clause does not preclude suits alleging violations of the Bill of Rights (Opp. 11-12)—or suits alleging that legislative actions "lack proper authorization or exceed the authority granted" (Opp. 11)—are flatly wrong. Such arguments are squarely foreclosed by *Eastland*, which held that the Speech or Debate Clause barred the plaintiff's argument that a Congressional subpoena's purpose was to "'harass, chill, punish and deter' [it] in the exercise of [a] First Amendment rights."  421 U.S. at 510 n.16, 503; *see also Rangel v. Boehner*, 785 F.3d 19, 24 (D.C. Cir. 2015) (rejecting the "familiar argument—made in almost every Speech or Debate Clause case"—that "the defendants' conduct cannot be legislative because it was, in [plaintiff's] view, *illegal.*" (internal quotation marks

4

omitted) (emphasis in original)).  The Supreme Court explained that the typical First Amendment balancing test "plays no part" when a Congressional subpoena is involved, and the Speech or Debate Clause "provides an absolute immunity from judicial interference."  *Eastland*, 421 U.S. at 510 n.16.

Mr. Olsen fails to address the clear language in *Eastland*, as well as the repeated holdings that "Congressmen and their aides are immune from liability for their actions within the 'legislative sphere,' even though their conduct, if performed in other than legislative contexts, would in itself be unconstitutional or otherwise contrary to criminal or civil statutes."  *Doe v. McMillan*, 412 U.S. 306, 312-13 (1973) (citation omitted); *see also Rangel*, 785 F.3d at 24 (explaining that the Clause prevents a court from exercising jurisdiction when a "plaintiff alleges that [the act] violated the House Rules . . . or even the Constitution").  Moreover, the D.C. Circuit in *McCarthy* recently affirmed a dismissal on Speech or Debate Clause grounds of a suit claiming that the actions at issue violated various provisions of the Constitution, citing (among other cases) *Consumers Union of U.S., Inc. v. Periodical Correspondents' Ass'n*, 515 F.2d 1341 (D.C. Cir. 1975), in which the D.C. Circuit dismissed on Speech or Debate Clause grounds a suit alleging violations of the First Amendment.

Consistent with this precedent, district courts have uniformly dismissed similar Constitutional challenges to the Select Committee's subpoenas on Speech or Debate grounds. *See Budowich v. Pelosi*, No. 21-3366, 2022 WL 2274359, at *6 (D.D.C. June 23, 2022) (Speech or Debate immunity applied notwithstanding Fifth, Fourth, and First Amendment claims); *Republican Nat'l Comm. ("RNC") v. Pelosi*, No. 22-659, 2022 WL 1294509, at *8 (D.D.C. May 1, 2022) (Speech or Debate immunity applied notwithstanding Fourth and First Amendment claims), *appeal pending*, No. 22-5123 (D.C. Cir.).

At bottom, Mr. Olsen's contention is that *Eastland* and its progeny were wrongly decided.  *See* Opp. 10 ("The Supreme Court, however, has ignored the intent of the Framers and the text of the Clause in a number of decisions that greatly expanded the scope of the privilege."); *id.* at 11 ("This judicial expansion of the Speech or Debate Clause exceeds the scope contemplated in text of the Constitution.").  Setting aside that this Court is not the proper forum for Mr. Olsen's challenge to Supreme Court precedent, Mr. Olsen's argument misunderstands and discounts the important protections of the Speech or Debate Clause.  The Clause ensures "that the legislative function the Constitution allocates to Congress may be performed *independently*," *Eastland*, 421 U.S. at 502 (emphasis added), and it thereby "reinforc[es] the separation of powers so deliberately established by the Founders," *United States v. Johnson*, 383 U.S. 169, 178 (1966).  The Speech or Debate Clause bars this suit.

## II.    The Amended Complaint Fails To State A Claim

Even if this Court had jurisdiction, as we have explained, Mr. Olsen's Amended Complaint fails to state any claim on which relief could be granted.  *See* Mem. 13-16.  Mr. Olsen's responses are unavailing.

### A.    The Subpoena Serves A Valid Legislative Purpose And Does Not Violate The Separation Of Powers

As the D.C. Circuit has already held, the Select Committee's investigation into the January 6th attack has a legitimate legislative purpose.  *Trump v. Thompson*, 20 F.4th at 41.  And the subpoena to Mr. Olsen—an attorney who lobbied the Department of Justice and the White House to take various actions to attempt to overturn the election, *see* Mem. 2-3—falls easily within the scope of that purpose.  *See id.* 13-14.

Mr. Olsen continues to press the same claims that the D.C. Circuit has already rejected, arguing that the Select Committee's investigation violates the separation of powers because it

seeks to "develop[] a case for criminal referral" (Opp. 23) and "expos[e]" information "for its own sake" (Opp. 24).  Remarkably, Mr. Olsen fails to cite the D.C. Circuit's decision in *Trump v. Thompson*, let alone attempt to distinguish it.  There is no need to belabor the point:  those arguments are squarely foreclosed by binding precedent.  *See Trump v. Thompson*, 20 F.4th at 42.

For starters, the Select Committee is tasked with uncovering the underlying causes of the attack on January 6th.  Its subpoena to Mr. Olsen is in furtherance of that effort.  But more importantly, Mr. Olsen is incorrect that, "[e]ven if the investigation has other legitimate purposes," the subpoena must be invalidated if intended to build a "case against former President Trump."  Opp. 22.  Plaintiff cites no authority for this proposition, which is directly contrary to controlling authority.  In *Watkins v. United States*, for example, the Supreme Court explained that an impermissible purpose "would not vitiate an investigation which had been instituted by a House of Congress if that assembly's legislative purpose is being served."  354 U.S. 178, 200 (1957).  And in *Eastland*, the Court emphasized that "courts should not go beyond the narrow confines of determining that a committee's inquiry may fairly be deemed within its province."  421 U.S. at 506 (internal quotation marks omitted).  Any other rule would substantially restrict Congress's investigative authority, because asking courts to divine and endorse *all* of the supposed purposes behind legislative action is an impossible (and improper) request.  The D.C. Circuit has already held that the Select Committee has a legitimate legislative purpose, and that is the end of the matter.

To the extent Mr. Olsen is arguing that *this* subpoena does not fall within the legitimate legislative purpose recognized by the D.C. Circuit (*see* Opp. 23), that argument also fails.  In *Trump v. Thompson*, the D.C. Circuit held that the Select Committee's legislative purpose

encompassed the need for Presidential records because of, among other things, then-President

Trump's role in "propagating the underlying false narrative of election fraud." 20 F.4th at 42.

The Select Committee's purpose certainly permits subpoenaing Mr. Olsen's documents relating

to propagation of that same narrative by a lawyer working actively with the Trump

administration to overturn the election.  Mr. Olsen's separation of powers claim fails.

**B.      The Select Committee's Investigation Is Consistent With House Resolution 503**

Mr. Olsen continues to assert that the Select Committee has "predetermin[ed] . . . that all

claims of election fraud are themselves fraudulent" and has not investigated such claims.  Opp.

23; *see also id.* at 21.  As already explained, that contention is patently false, and in any event,

Mr. Olsen cannot dictate how a Congressional committee conducts its investigation.  *See* Mem.

21.  The Select Committee is properly investigating the causes that fomented the January 6th

attack, consistent with its authoring resolution.  *See* H. Res. 503, 117th Cong. (2021).  No further

response is warranted, except to directly address Mr. Olsen's grievance that he "has not been

given a fair opportunity to answer the accusation" that his claims of election fraud are false.

Opp. 24.  If Mr. Olsen would like such an opportunity, he is welcome to comply with the

subpoena.

**C.      The Select Committee Is Properly Composed**

Mr. Olsen has expressly abandoned his claim that the Select Committee or its subpoena

violates House rules.  *See* Opp. 24.

**D.      Mr. Olsen's Other Constitutional Claims Fail**

Mr. Olsen insists that he is bringing a "hybrid" claim under both the First and Fourth

Amendment (Opp.12), perhaps in recognition that each of those claims would be insufficient on

their own.  Even assuming such a "hybrid" claim is proper, Mr. Olsen's allegations

independently fail to state any First or Fourth Amendment claim, and for the same reasons any "hybrid" claim fails as well.

### 1.  Mr. Olsen Fails To State A Valid Fourth Amendment Claim

As another court in this district recently explained, *McPhaul v. United States*, 364 U.S. 372, 382 (1960), is "[t]he leading Supreme Court case on Fourth Amendment challenges to legislative subpoenas." *RNC*, 2022 WL 1294509, at *24. The subpoena to Mr. Olsen easily passes the *McPhaul* standard: the scope of materials sought is within the scope of the Select Committee's inquiry and the materials sought are not more sensitive than in *McPhaul*. *See* Mem. 25-26.

Instead of grappling with the standard set forth in *McPhaul*, Mr. Olsen suggests that it does not apply. *See* Opp. 13. That contention is incorrect—*McPhaul* sets forth the governing standard for Fourth Amendment challenges to legislative subpoenas. Indeed, there are few other federal decisions addressing this issue. *See RNC*, 2022 WL 1294509, at *24. Mr. Olsen cites *Trump v. Deutsche Bank AG*, 943 F.3d 627 (2d Cir. 2019), and *Americans for Prosperity Foundation v. Bonta*, 141 S. Ct. 2373 (2021), but neither decision has any relevance here. Neither case involved a Fourth Amendment claim, and *Bonta* did not involve a legislative subpoena (or any subpoena for that matter). *McPhaul*, by contrast, squarely addressed the standard for considering a Fourth Amendment challenge to a legislative subpoena.

Under a proper application of the *McPhaul* standard, Mr. Olsen's Fourth Amendment claim fails. Mr. Olsen was involved in challenges to the election results and had multiple calls with President Trump on January 6th. *See* Am. Compl. Ex. 2. The subpoena requests documents relating to claims of election fraud surrounding the 2020 Presidential election and attempts to delay election certification (*see* Am. Compl. Ex. 2)—important influencing factors for the January 6th attack. The subpoena to Mr. Olsen is within the ambit of the Select

Committee's investigation, and consequently does not violate the Fourth Amendment.  *See* Mem. 25-26.

Mr. Olsen doubles down on his argument that the subpoena "is governed by the warrant provision" of the Fourth Amendment.  Opp. 14.  He contends that he "need not wait until a search has been conducted" to challenge the subpoena.  *Id.*  Mr. Olsen misses the point:  a Congressional subpoena for documents and testimony is not a *warrant for a search within the meaning of the Fourth Amendment*.  No such search has been or will ever be conducted as a direct result of the Select Committee's subpoena.  The Fourth Amendment's warrant requirement does not apply, and Mr. Olsen cites no authority to the contrary.  *See* Mem. 24-25.

### 2.     Mr. Olsen Fails To State A Valid First Amendment Claim

As we explained in our motion to dismiss, Mr. Olsen's First Amendment claim fails for multiple reasons.  *See* Mem. 23.  Mr. Olsen's opposition offers no persuasive response.

Mr. Olsen's alleged First Amendment interests are too speculative to be actionable.  *See id.*  Mr. Olsen claims the Amended Complaint contains a "detailed description" of "the chilling effect of the recent statements and actions of the Biden Administration that threaten American citizens who express concerns about the legitimacy of the 2020 presidential election with investigation and possible prosecution as domestic terrorists."  Opp. 16.  But none of those allegations, even if true, suggests that this *Congressional subpoena* for *Mr. Olsen's information and testimony* would somehow chill any speech.  Nor can Mr. Olsen simply assert that the "mere issuance of the Subpoena is chilling."  Opp. 17.  None of the cases he cites suggests that such a bald allegation can survive a motion to dismiss.

For example, in *Watkins*, the Supreme Court recognized that an investigative subpoena "may" lead to "abridgment of [First Amendment rights]," but it did not suggest that a plaintiff was excused from adequately alleging a chilling effect in a complaint when a Congressional

subpoena is involved.  354 U.S. at 197.  Mr. Olsen simply fails to "explain the nature and scope" of *this subpoena's* "alleged intrusion into his First Amendment rights."  *Senate Permanent Subcomm. v. Ferrer*, 199 F. Supp. 3d 125, 143 (D.D.C. 2016), *vacated as moot*, 856 F.3d 1080 (D.C. Cir. 2017).

Even if Mr. Olsen's Amended Complaint had alleged an actionable interest, the balance of interests favors the Select Committee.  *See* Mem. 23-24.  "[T]he protections of the First Amendment . . . do not afford a witness the right to resist inquiry in all circumstances." *Barenblatt v. United States*, 360 U.S. 109, 126 (1959).  Rather, courts must balance the "competing private and public interests at stake in the particular circumstances shown."  *Id.* Certain government interests, especially those involving the "free functioning of our national institutions" are "sufficiently important to outweigh the possibility of infringement."  *Buckley v. Valeo*, 424 U.S. 1, 66 (1976); *see also Ferrer*, 199 F. Supp. 3d at 143 (holding that Congressional investigation interests "substantially outweigh[ed]" any intrusion on subpoena recipient's "incidental" First Amendment rights).  The Select Committee is investigating the deadliest attack on the Capitol "in the history of the United States" to make "legislative recommendations" to prevent future acts of such violence.  *Trump v. Thompson*, 20 F.4th at 16, 35.  The Select Committee's interest in obtaining documents from, and conducting a deposition of, Mr. Olsen necessarily involves the "free functioning of our national institutions" and substantially outweighs any theoretical, incidental harm alleged by Mr. Olsen.

Mr. Olsen contends that this Court must determine whether the subpoena is "narrowly tailored" to promote the government's interest.  Opp. 20 (quoting *Bonta*, 141 S. Ct. at 2385). But Mr. Olsen cites no case (and the Congressional Defendants are not aware of any) in which a court has applied this standard to a Congressional subpoena.  Indeed, courts that have had the

occasion to examine the scope of a legislative subpoena generally "only inquire as to whether the documents sought by the subpoena are 'not plainly incompetent or irrelevant to any lawful purpose [of the Committee] in the discharge of [its] duties.'"  *Bean LLC v. John Doe Bank*, 291 F. Supp. 3d 34, 44 (D.D.C. 2018) (quoting *Senate Select Comm. on Ethics v. Packwood*, 845 F. Supp. 17, 20-21 (D.D.C. 1994) and *McPhaul*, 364 U.S. at 381).  Furthermore, this case is not like *Bonta*, which was a true "compelled disclosure" case in that the challenged state policy required nonprofit organizations to disclose the names of their donors and members.  No such information is sought here; this is a "compelled disclosure" case only in the sense that *every* subpoena seeks to compel disclosure of some sort.

Regardless, this subpoena meets the more stringent "narrowly tailored" standard urged by Mr. Olsen.  On its face, the subpoena requests information relating to claims that the 2020 election results were fraudulent and the attempts to delay election certification—factors that the Select Committee reasonably believes may have played a crucial role in the January 6th attack. *See* Am. Compl. Ex. 2; Mem. 21-22.  The subpoena is thus narrowly tailored to obtain information about whether and how the stolen-election narrative contributed to the January 6th attack, and how such a narrative after the attack could again threaten the peaceful transfer of power.

Mr. Olsen's contention that the subpoena "violates freedom of the press" (Opp. 20) fares no better.  Mr. Olsen cites no case that comes close to suggesting that a lawyer who promotes claims of election fraud should be treated like "the press" for First Amendment purposes.  In any event, as discussed above, given the unique and weighty interests of the Select Committee, the subpoena survives any plausible test of heightened scrutiny.

### E.    Mr. Olsen's Compliance With The Subpoena Will Not Violate Attorney-Client Privilege Nor Work Product Protections[1]

Mr. Olsen appears to concede that a blanket privilege claim—such as the one in his Amended Complaint—is improper (*see* Opp. 25), and that he may be required to submit a privilege log "[a]t the appropriate juncture" (Pl.'s Mem. in Supp. of Prelim. Inj. 13).  But the appropriate juncture was the return date of the subpoena.  Mr. Olsen asserts that in *Committee on Judiciary v. Miers*, 558 F. Supp. 2d 53, 107 (D.D.C. 2008), counsel for the committee acknowledged there was no statute or case law that expressly required the production of a privilege log in response to a Congressional subpoena.  *See* Opp. 25.  But the absence of such express language does not mean that a Congressional committee lacks authority to request a privilege log incident to its subpoena power.  Indeed, as the *Miers* court recognized, a privilege log is "a tremendous aid during the negotiation and accommodation process," because it "may lead the Committee to conclude that it has no need for certain categories of documents, thus helping to narrow the dispute between the parties and enhance the possibility of resolution."  558 F. Supp. 2d at 107.  It is thus no surprise that, as part and parcel of its well-settled subpoena power, a Congressional committee can require such a widely accepted aid in evaluating privilege claims.  *See* Order at 4, *Senate Permanent Subcomm. on Investigations v. Ferrer*, No. 16-mc-621 (D.D.C. Sept. 16, 2016), ECF No. 29 (stating that a Senate committee's request for a privilege

---

[1] Congress has consistently taken the view that its investigative committees are not bound by judicial common law privileges such as the attorney-client privilege or the work product doctrine.  *See generally* Christopher M. Davis et al., Cong. Rsch. Serv., RL30240, Congressional Oversight Manual 61-62 (March 31, 2021).  This aspect of Congress's investigative authority is rooted in the separation of powers inherent in the Constitution's structure.  *Id.*  Congress and its committees make decisions regarding such common law privileges by balancing the important institutional, constitutional, and individual interests at stake on a case-by-case basis.  Here, Congressional Defendants have determined, consistent with their prerogatives, not to submit an argument on this point.  This is not, however, intended to indicate, in any way, that Congress or its investigative committees will decline to assert this institutional authority in other proceedings.

13

log "was not a suggestion or a recommendation," and concluding that the defendant had waived his privilege claims by failing to provide a privilege log).[2]

Regardless Mr. Olsen's argument misses the point.  He cannot state a valid claim that the Select Committee's subpoena *violates* attorney-client privilege and work product protections when the subpoena expressly provides a means of raising privilege claims—through a privilege log.  *See* Mem. 26-27.  This claim must be dismissed.

## <u>CONCLUSION</u>

For all the reasons stated above and in our Memorandum of Law in Opposition to Plaintiff's Motion for Preliminary Injunction and in Support of Defendants' Motion to Dismiss, the Amended Complaint should be dismissed in its entirety with prejudice.

---

[2] *Miers*, unlike this case, involved a dispute between branches of government.  Thus, to the extent interbranch accommodations led the *Miers* Court to "stop short of requiring the Executive to produce a full privilege log" but rather require "a more detailed list and description of the nature and scope of the documents it seeks to withhold on the basis of executive privilege sufficient to enable resolution of any privilege claims," 558 F. Supp. 2d at 107, those considerations are not at issue here.

Respectfully submitted,

*/s/ Douglas N. Letter*
DOUGLAS N. LETTER
   *General Counsel*
TODD B. TATELMAN
   *Principal Deputy General Counsel*
ERIC R. COLUMBUS
   *Special Litigation Counsel*
MICHELLE S. KALLEN
   *Special Litigation Counsel*

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House Office Building
Washington, D.C. 20515
Telephone: (202) 225-9700
Douglas.Letter@mail.house.gov

August 1, 2022

**CERTIFICATE OF SERVICE**

I hereby certify that on August 1, 2022, I caused the foregoing document to be filed via the CM/ECF system for the U.S. District Court for the District of Columbia, which I understand caused a copy to be served on all registered parties.

*/s/ Douglas N. Letter*
Douglas N. Letter